**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE, | : |
| | : |
| | :    CIVIL ACTION |
| Plaintiff, | : |
| v. | :    No. |
| | : |
| THE HILL SCHOOL, | : |
| Defendant. | : |
| | : |

## <u>PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM</u>

Plaintiff John Doe ("Doe") hereby moves for an order allowing him to proceed pseudonymously with his lawsuit against Defendant, The Hill School, and to limit the disclosure of his name by the participants in this litigation. In so moving, Doe relies on the accompanying Memorandum of Law and the facts alleged in the Verified Complaint.

Respectfully submitted,

Date: March 29, 2023

*/s/ Patricia M. Hamill*
Patricia M. Hamill (PA Id. No. 48416)
Andrew S. Gallinaro (PA Id. No. 201326)
**CLARK HILL PLC**
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
(t) (215) 640-8500/(f) (215) 640-8501
phamill@clarkhill.com
agallinaro@clarkhill.com

/s/ *Joseph G. Poluka*
Joseph G. Poluka (PA Bar No. 42035)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
joseph.poluka@blankrome.com
215-569-5624

*Attorneys for Plaintiff John Doe*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. |
| | : | |
| THE HILL SCHOOL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION TO PROCEED UNDER A PSEUDONYM**

## I.   INTRODUCTION

Plaintiff John Doe ("Doe") respectfully requests permission to proceed in the above-captioned matter pseudonymously to maintain and protect his privacy and reputational interests as he seeks redress against Defendant The Hill School ("the School") for its grievous mishandling of a disciplinary proceeding against Doe, a Junior and boarding student, which resulted in Doe's expulsion from the School.  All of Doe's causes of action arise from highly sensitive matters personal to him.  The School is fully aware of the actual identity of Doe and, as explained more fully below, will not be prejudiced in any manner by Doe's use of this pseudonym for public filings in this case.  As demonstrated below, well-established precedent supports Doe's use of a pseudonym.

The inclusion of Doe's name in the Verified Complaint and other filings would result in the public association of his name with the highly sensitive and personal matters underlying his disciplinary proceeding, which would become widely available through electronic means and thus defeat the very purpose of this lawsuit by increasing the very reputational harm he is attempting to redress.  Notably, Doe's Verified Complaint seeks relief from the School's discrimination of

him on the basis of his past substance abuse and the emotional distress the School inflicted upon him through the unwarranted disciplinary finding against him.  The lawsuit discusses in detail Doe's substance use issues and his participation in a drug rehabilitation program.  Publicly identifying Doe in this litigation would subject him to societal stigmas associated with substance abuse and mental health, and would only increase his damages.  Additionally, due to the School's small student body, the inclusion of Doe's name in the lawsuit would make it likely that other students involved in events underlying the disciplinary proceeding would be publicly identified. For these reasons, Doe respectfully requests that the Court grant this Motion and allow him to proceed by pseudonym.

## II.      FACTUAL BACKGROUND

The factual background of this case is set forth in detail in Doe's Verified Complaint, which is incorporated here by reference. Nevertheless, Doe summarizes below the factual allegations that support his claims and the basis for this motion.

Doe enrolled in the School as a Junior and boarding student in the Fall of 2022.  Doe suffers from attention deficit hyperactivity disorder (ADHD) and major depressive disorder, and both Doe and his parents decided to transfer him to the School because the School offered resources to support his educational needs that were greater than those offered by his prior school.  Doe had no prior disciplinary history at his prior school.

As a first-time boarding student, Doe had initial difficulties adjusting to the School.  During this time, Doe used marijuana and tobacco products as a means of managing his depression and anxiety, and as a way of fitting in with his peers.  Unfortunately, Doe's substance use had significant adverse impacts on both his emotional well-being and his academic performance.  His condition was severe enough that he was sent home for the final week of the Fall Term (December 12-16, 2022).  Before Doe left the School, he was enrolled in the School's non-disciplinary

Immediate Care (I Care) program, a rehabilitation program that provides students with access to counselors and other supportive measures designed to assist them in recovering from addiction. The I Care Program promises that students will not be disciplined for their substance abuse or their participation in I Care if they comply with the strictures of the program—which Doe did. When Doe returned to school for the start of Winter Term on January 4, 2023, he began treatment through the School's I Care Program

On January 10, 2023—and despite the I Care Program's promise noted above—Ari Baum, the Assistant Head of School, wrote to Doe's parents to provide them with an "update" on Doe's "status at The Hill School, both in terms of health and wellness, as well as discipline."  In that communication, Mr. Baum referenced the "non-disciplinary" nature of the I Care Program repeatedly but nevertheless explained that the School was imposing retroactive discipline against Doe based on information they uncovered through Doe's participation in the I Care program.[1] Specifically, Doe was retroactively suspended for the time he was away from school for recovery purposes (December 12-16) and was placed on "Conduct Warning"—a probationary period during which a student is on notice that future disciplinary infractions will result in an increased chance of dismissal from the School.

Despite the improper imposition of discipline against Doe through his participation in the I Care Program, Doe and his parents did not challenge the sanction because the suspension was limited to "time served" for the time he was already out of school seeking medical treatment, and

---

[1]  As explained in detail in the Verified Complaint, during the I Care enrollment process, the School confiscated Doe's cellphone, forced Doe to provide his password, and reviewed his text messages.  In reviewing Doe's cellphone, the School claimed they obtained information that demonstrated that Doe had been involved in the "distribution" of substances on campus.  In actuality, however, Doe and his peer group were simply assisting one another in obtaining THC cartridges, sharing what they had, and reimbursing each other when someone was able to purchase cartridges for themselves and their friends—Doe was not involved in the sale of substances.

more importantly, because the opportunity to continue participating in the School's I Care Program was of paramount importance.

Doe thrived under the I Care Program, complied with all program requirements, including demonstrating his non-use through frequent and random drug tests, and he experienced marked improvement in his mental health and academic performance. Doe's teachers noticed that he was engaged in class and performing at a higher level, Doe's friends found him to be more present, cheerful and outgoing, and Doe's parents noticed that their son seemed to be well on his way to recovery and a brighter future.

In early February 2023, Doe became involved in the prevalent culture and history of pranking at the School when he was on the receiving end of a prank called "watering," where students snuck into his room and poured a cup of water on him while he slept in his bed. While the Dorm Parents in Doe's dormitory hall instructed students to stop the "watering" pranks, Doe was encouraged by upperclassmen to participate in "watering" a student on a different floor the following weekend. As a new student and a Junior still finding his niche, Doe felt strong social pressure from the upperclassmen to participate in the prank and, as the newest student in the group, he was designated as the individual to pour water on the targeted student while the upperclassmen stood watch.

Unbeknownst to Doe, the student had previously complained to the School of pranking by others in the dorm. The student identified Doe and the other students who participated in the prank to the Dorm Parents the following day, and despite Doe truthfully admitting his role in the prank, he was immediately suspended from the School pending a disciplinary hearing to determine his further punishment.

The School elected to adjudicate Doe's conduct violation through its formal disciplinary hearing process[2]—a process which improperly and arbitrarily resulted in sanctioning Doe with expulsion.  During the disciplinary hearing process, Mr. Baum read a factual statement to the Discipline Committee in which he made references to the events that led to Doe's enrollment in the I Care Program and advised that Doe had received a Conduct Warning for "interfering with a medical investigation," despite previously representing to Doe that I Care was *not* relevant to the proceedings and instructing Doe not to discuss his prior Conduct Warning in any detail.  Upon information and belief, Mr. Baum (who conducted the I Care enrollment process) also made improper disclosures to the Discipline Committee about Doe's prior substance use during deliberations in an attempt to influence the Committee's vote against Doe.  Mr. Baum also forbade Doe's I Care counselor, Lisa Roethling, from advocating on Doe's behalf at the hearing.

The Discipline Committee found Doe responsible for "Bullying" and "Disrespectful Behavior," and recommended to the Interim Head of School, Dr. Sylvia Rodriguez Vargas, that Doe be required to withdraw.  On February 17, 2022, Doe's parents received a letter from Mr. Baum explaining the basis for the School's decision to require Doe to permanently withdraw, which made clear—in plain and explicit terms—that Doe's prior substance use was a motivating factor in the School's decision.  Doe's parents subsequently (1) objected to the School's use of the I Care-obtained information against their son, (2) made repeated attempts to meet with School officials to voice their concern that not only was Doe being improperly disciplined, but also was losing access to a support program that had been instrumental in his recovery, (3) submitted a letter from Doe's therapist disclosing, *inter alia*, the heightened risk of Doe relapsing without access to the School's treatment program, and (4) made multiple requests for a meeting with the Interim

---

[2]      A description of the formal disciplinary hearing process is set forth in the School's Student Handbook, which is attached as Exhibit A to the Verified Complaint.  *See* Verified Complaint, Ex. A at 59.

Head of School, Dr. Vargas.  Despite these efforts, and despite paying nearly $70,000 in tuition to the School, neither Dr. Vargas nor any School administrator met with Doe's parents to hear and address their concerns.

Doe has since learned that of the four other students that participated in the prank, the two with prior disciplinary infractions were expelled, while the two without disciplinary history were suspended.  Doe has also learned that at least three more students were caught "watering" in the weeks after Doe's incident, and none of those students were expelled.  As such, Doe brings the instant action against the School for the School's discrimination of him based on his past substance abuse and the improper imposition of a sanction against him in the context of the non-disciplinary I Care Program.

As a result of the School's adverse decision against him, Doe has suffered and continues to suffer significant emotional distress, physical manifestations of emotional distress, and has and will continue to incur expenses for medical and psychological treatment, therapy, and counseling. Without judicial relief, Doe will also likely have to attend three different schools for his junior and senior years which will undoubtedly be a significant impediment in his college application and selection process.  Through the filing of this Motion, Doe seeks to prevent the School from discriminating against other similarly situated students.

## III.    LEGAL ARGUMENT

### A.    Principles Governing Pseudonymous Filings

Although Federal Rule of Civil Procedure 10(a) requires that a complaint name all parties, courts have long permitted parties to use pseudonyms for themselves and others when necessary to protect privacy and reputational interests.  *See, e.g.*, *Doe v. Brandeis*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016) (permitting use of pseudonym because student-plaintiff could be subject to "stigmatization" in lawsuit against college that found him responsible for sexual assault); *Doe v.*

*Von Eschenbach*, No. 06-2131, 2007 WL 1848013, at *1-2 (D.D.C. June 27, 2007) (noting that use of pseudonyms "has been permitted where the issues are 'matters of a sensitive and highly personal nature'" and observing that "presumption of openness" must be balanced with "plaintiff's privacy rights"); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 467 (E.D. Pa. 1997) (stating "litigants may have a strong interest in protecting their privacy"); *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) ("The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'").

In *Doe v. Megless*, the Third Circuit held that a plaintiff seeking to litigate pseudonymously must "sufficiently allege[] that he or she has a reasonable fear of severe harm from litigating without a pseudonym," and endorsed a balancing test that since has been used by courts in this circuit to determine whether a "plaintiff's interest and fear" outweigh the "public's strong interest in an open litigation process."  654 F.3d 404, 408-10 (3d Cir. 2011) (citations omitted) (endorsing factors established in *Provident Life*, *supra*).  *Megless* directs district courts to consider the particular circumstances of each case and the "non-exhaustive list of factors to be weighed both in favor of anonymity and also factors that favor the traditional rule of openness."  *Id.* at 409 (citing *Provident Life*, 176 F.R.D. at 467).  The non-exhaustive list of *Megless* factors that support the use of a pseudonym consist of the following:

> (1) the extent to which the identity of the litigant has been kept confidential;
>
> (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;
>
> (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

(4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

(5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and

(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (quoting *Provident Life*, 176 F.R.D. at 467-68). The non-exhaustive *Megless* factors that militate against the use of a pseudonym consist of the following:

(1) the universal level of public interest in access to the identities of litigants;

(2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

(3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life*, 176 F.R.D. at 467-68).

## B. The *Megless* Factors Weigh Heavily in Favor of Permitting Doe to Litigate Pseudonymously

The *Megless* factors weigh heavily in Doe's favor.  As a high school student, Doe has a substantial privacy right that outweighs the public's interest in access to identities of litigants and the customary presumption of openness in judicial proceedings.  Because this case seeks redress for the Hill School's disparate treatment of Doe in connection with drug abuse, which resulted in his expulsion, Doe has a reasonable fear that he will suffer severe social stigmatization and reputational harm if he is denied the opportunity to pursue this action without use of a pseudonym. Although the public has a legitimate interest in the legal issues Doe raises in his Verified

Complaint, his actual identity and the identities of the individuals referenced in the Verified Complaint are of minimal importance to the public.

Doe is not a public figure, he has maintained the confidentiality of his identity, and he has revealed information regarding his substance use, rehabilitation and the disciplinary hearing process only to a small inner circle of individuals with a need to know.  Perhaps most important, though, is that if the Court denies this motion, Doe will suffer one of the very harms that he is seeking to undo with the filing of his Verified Complaint.  (*See* Verified Complaint ¶ 83) (detailing the emotional and physical distress Doe has endured and will continue to endure if his identity is disclosed).  Public disclosure may serve as a deterrent to Doe and other similarly situated high school students seeking redress through the only remaining avenue available to them—the courts.

As explained below, each of the *Megless* factors supports Doe's request to proceed pseudonymously in this case.

### 1.  Doe's Identity Has Been Kept Confidential.

First, Doe's identity has been kept confidential thus far due to his own efforts.  Doe has been careful to keep his identity confidential, only disclosing his involvement in this matter to those close to him and with a need to know.

Courts routinely find that this first *Megless* factor weighs in favor of pseudonymity where the plaintiff has limited the disclosure of sensitive information to a few others and has not publicly discussed their lawsuit.  *See, e.g.*, *Provident Life*, 176 F.R.D. at 468; *Doe 1 v. Perkiomen Valley Sch. Dist.*, No. 22-287, 2022 WL 222525, at *2 (E.D. Pa. Jan. 25, 2022); *Doe v. Reg'l Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248, at *3 (D. Me. May 29, 2020); *Doe v. Princeton Univ.*, No. 19-7853 (BRM), 2019 WL 5587327, at *3 (D.N.J. Oct. 30, 2019); *Doe v. Rutgers*, No. 2:18-12952, 2019 WL 1967021, at *2 (D.N.J. Apr. 30, 2019); *Doe v. Trustees of Dartmouth Coll.*, No. 18-40, 2018 WL 2048385, at *5 n.2 (D.N.H. May 2, 2018).

Because Doe has been careful to keep his identity confidential and has only disclosed the facts surrounding this matter to a small inner circle of people, this first *Megless* factor weighs in favor of pseudonymity.

> **2.     Doe Has a Substantial Basis for Seeking to Avoid Disclosure of His Identity.**

Second, Doe seeks to proceed using a pseudonym to minimize the social stigma associated with substance abuse and mental illness.

In *Smith v. United States Off. of Pers. Mgmt.*, the Pennsylvania district court granted the plaintiff's motion to proceed under a pseudonym in an action related to the denial of benefits for a residential treatment program.  No. 2:13-CV-5235, 2014 WL 12768838, at *1 (E.D. Pa. Jan. 21, 2014).  The court explained that the second *Megless* factor weighed in favor of the plaintiff as he "reasonably fear[ed] embarrassment to himself and his family if his identity is disclosed because of the societal stigma associated with addiction."  *Id.* at *2.  Similarly, in *Doe v. United Behav. Health*, the court found that the second *Megless* factor weighed in favor of the plaintiff, who suffered from mental illness, because she expressed "concern[] that the associated stigma w[ould] negatively affect her life both during her present college years and her future career" and that "disclosure of her identity . . . would cause additional anxiety and stress and would aggravate her illness[.]"  No. 10-5192, 2010 WL 5173206, at *3 (E.D. Pa. Dec. 10, 2010).  As the court noted, "in our society[] there is a significant stigma associated with being identified as suffering from a mental illness."  *Id.* (quotations omitted) (quoting *Provident Life*, 176 F.R.D. at 468); *see also Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (finding the second factor weighed in favor of the plaintiff where the plaintiff's mental illness was severe and "he ha[d] articulated concerns that disclosure of his real name w[ould] aggravate his condition and result in greater anxiety and stress-concerns").

10

Here, Doe suffers from ADHD and major depressive disorder, and he was addicted to marijuana and tobacco until his successful treatment through the Hill School's I Care Program. Doe challenges the School's disciplinary finding against him that was based in large part on his prior substance abuse, and he seeks to be reinstated as a student in good standing, where he may continue his treatment through the I Care Program.  Given Doe's history of mental illness and that his prior substance abuse is highly relevant to this litigation, Doe reasonably fears the societal stigma associated with mental illness and drug use if he is required to use his actual name, and that the associated stigma may affect his future educational and employment prospects.  Doe also fears that disclosing his identity will only worsen his mental illness.  The second *Megless* factor thus weighs in Doe's favor.

### 3.     The Public Interest in Maintaining the Confidentiality of Doe's Identity is High.

Third, there is a significant public interest in maintaining the confidentiality of Doe's identity.

Indeed, the court in *Prudential Life* acknowledged the "significant public interest" in "preventing the stigmatization of litigants with mental illnesses."  176 F.R.D. at 468.  "However, this goal cannot be achieved if litigants suffering from mental illness are chilled from ever reaching the courthouse steps for fear of repercussions that would ensue if their condition was made public." *Doe v. Hartford Life & Acc. Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006).  This rationale equally and logically extends to litigants suffering from substance abuse.  *See Smith*, 2014 WL 12768838, at *2.

Here, Doe "is faced with circumstances that society may not yet understand or accept[,] and his [substance use] is directly tied to the issues before the Court."  *Hartford Life*, 237 F.R.D.

at 550.  As such, and given the "significant public interest" at play, the third *Megless* factor weighs in favor of pseudonymity.

### 4.    There Is Little Public Interest in Knowing Doe's Identity.

Fourth, although there is a public interest in the legal issues raised in Doe's Verified Complaint, the public has little interest in knowing, and no compelling need to know, his actual identity.  There is a "typically weak public interest in knowing the litigants' identities" due to the "[p]urely legal nature of the issues presented."  *Doe v. Del Rio*, 241 F.R.D. 154, 157 (S.D.N.Y. 2006).  Doe is a high school student with no public profile.  Knowledge of his identity by the public would not in any way affect the public's understanding of or views with respect to this litigation.  *See Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) ("[A]lthough the public certainly has an interest in the issues [Doe's] complaint raises, protecting her identity will not impede the public's ability to follow the proceedings."); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) ("Party anonymity [will] not obstruct the public's view of the issues joined or the court's performance in resolving them.").  And in this case all filings submitted to the Court will be a matter of public record and will be available for public review.

Accordingly, the fourth *Megless* factor weighs in favor of permitting Doe to proceed pseudonymously.

### 5.    The Undesirability of an Outcome Adverse to Doe Due to His Withdrawing the Case at the Cost of Being Publicly Identified.

Fifth, due to the social stigma and associated and long-term negative consequences that the disclosure of his identity would cause, as described above, Doe may be deterred from pursuing this case in court if the price he must pay is public identification.  And the larger impact of this chilling effect would likely be to deter other similarly situated individuals who would otherwise turn to the courts as their last best hope to vindicate their legal rights.  *See Hartford Life*, 237

F.R.D. at 550.  Courts have determined that there is a substantial public interest in ensuring that cases involving issues like those in Doe's case are adjudicated without the risk of stigmatization. *See id.*; *Prudential Life*, 176 F.R.D. at 468.  Accordingly, the fifth *Megless* factor weighs in Doe's favor.

> **6.    Doe Has No Illegitimate Ulterior Motives in Seeking to Sue Pseudonymously.**

Sixth, Doe has no illegitimate or ulterior motive in moving to proceed by pseudonym.  Nor is there any evidence otherwise.  As noted above, the only collateral effects of permitting him to do so is the assurance that other similarly situated individuals will not be deterred from turning to the courts to vindicate their legal rights.  Accordingly, the sixth *Megless* factor weighs in Doe's favor.

> **7.    The *Megless* Factors Disfavoring Doe's Use of a Pseudonym are Weak or Nonexistent.**

The *Megless* factors militating against the use of a pseudonym—the universal level of public interest in access to the identities of litigants, whether there is a particularly strong interest in knowing the litigant's identities, whether the opposition to pseudonym is illegitimately motivated—are correspondingly weak or nonexistent.  Of these factors, the only one weighing against the use the use of a pseudonym is the first.  But although there exists a general public interest in open courts and knowledge of the identities of parties to a dispute, this interest is present in all civil actions and cannot outweigh the factors in support of pseudonymity if those other factors are found to "tip in favor of plaintiff's use of a pseudonym."  *Provident Life*, 176 F.R.D. at 469. Moreover, that interest is low here due to the fact that Doe is a high school student not in any way a public figure or with any public profile, and all of the relevant factual and legal issues involved in this dispute are otherwise publicly available.  As noted, although there may be public interest in the subject matter of Doe's case, there is little independent public interest in Doe's identity.

The other two factors favor permitting Doe's use of a pseudonym. There is no *particularly* strong interest in knowing Doe's identity—whether because of the litigation's subject matter or Doe's status as a public figure, or otherwise—beyond the normal public interest in cases. Quite the opposite. All of the relevant subject matter will be public, and, as noted, Doe is far from being a public figure.

For the reasons set forth above, as well as the reasons described in the next section, The Hill School should not oppose this Motion.

### C.     Permitting Doe to Litigate Pseudonymously Will Not Unfairly Disadvantage The Hill School

Finally, The Hill School will not be unfairly disadvantaged in defending this case if Doe proceeds anonymously. Numerous federal courts have allowed student-plaintiffs, like Doe, to proceed under a pseudonym in cases against their educational institutions which involve highly sensitive and personal matters. *See Perkiomen Valley*, 2022 WL 222525, at *3; *Reg'l Sch. Unit No. 21*, 2020 WL 2833248, at *4; *Princeton*, 2019 WL 5587327, at *7; *Doe v. Rector & Visitors of Univ. of Va.*, No. 19-38, 2019 WL 2718496, at *1 (W.D. Va. June 28, 2019); *Dartmouth*, 2018 WL 2048385, at *7; *Doe v. Purdue Univ.*, 321 F.R.D. 339, 343 (N.D. Ind. 2017); *Doe v. Univ. of St. Thomas*, No. 16-1127-ADM-KMM, 2016 WL 9307609, at *2 (D. Minn. May 25, 2016); *Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 594 (E.D. Va. 2016); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 764 (E.D. Tenn. 2009).

Moreover, unlike cases in which prejudice to the defendant is a concern because the defendant did not know the plaintiff's identity, the School knows Doe's actual identity and will be entitled to the same full discovery as if Doe were litigating under his own name. *See, e.g.*, *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001) ("The only justification the defendants offer for stripping Roe of her privacy is the argument that they will not be able to

adequately conduct discovery without knowing her true identity.  However, that argument is eviscerated by Roe's offer to disclose her name to the defendants for discovery purposes on condition that they do not disclose it to the general public.").

## IV.    CONCLUSION

For the reasons described above, the *Megless* factors support permitting Doe to proceed under a pseudonym.  These factors weigh in favor of protecting Doe's identity to guard against the stigmatization and associated and long-term negative consequences resulting from unnecessary public disclosure.  For the foregoing reasons, Doe's Motion should be granted.

Respectfully submitted,

Date: March 29, 2023

/s/ Patricia M. Hamill
Patricia M. Hamill (PA Id. No. 48416)
Andrew S. Gallinaro (PA Id. No. 201326)
**CLARK HILL PLC**
Two Commerce Square
2001 Market Street, Suite 2620
Philadelphia, PA 19103
(t) (215) 640-8500/(f) (215) 640-8501
phamill@clarkhill.com
agallinaro@clarkhill.com

/s/ Joseph G. Poluka
Joseph G. Poluka (PA Bar No. 42035)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
joseph.poluka@blankrome.com
215-569-5624

*Attorneys for Plaintiff John Doe*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the above document was served upon the Hill School through its attorney, Phillipa Gage Lilienthal, on March 29, 2023, at the following address via electronic mail:

Phillipa Gage Lilienthal, Esq.
SCHWARTZ HANNUM PC
11 Chestnut Street, Andover, MA 01810-3744
plilienthal@shpclaw.com


_/s/ Patricia M. Hamill_

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE, | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : No. |
| v. | : |
| | : |
| THE HILL SCHOOL, | : |
| | : |
| | : |
| Defendant. | : |
| | : |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____ 2023, upon consideration of Plaintiff John Doe's ("Doe") Motion to Proceed Under a Pseudonym, and any response in opposition thereto, it is hereby **ORDERED** as follows:

**1.** Plaintiff's Motion is **GRANTED**. Plaintiff may continue to proceed as "John Doe," and the docket shall continue to reflect his name as such.

**2.** Plaintiff shall provide his true name to the Court by filing a notice under seal within five days of the entry of this order.

**3.** Plaintiff shall be referred to as "John Doe" in all future papers filed in this litigation.

**4.** Plaintiff's actual name shall be available to the attorneys of record in this litigation, who shall not disclose or permit disclosure of this name except to their law partners, associates, and persons employed in the law offices of such attorneys.

BY THE COURT:

_____
U.S.D.J.