**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF**
**PENNSYLVANIA**

| | |
|---|---|
| JOHN DOE,         )<br>        )<br>     Plaintiff,   )<br>        )<br>    v.         )<br>        )<br>THE HILL SCHOOL, and  )<br>ARIEL BAUM,       )<br>        )<br>     Defendants.  )| Civil Action No. 2:23-CV-01210-GAM<br><br>**[ORAL ARGUMENT REQUESTED BY DEFENDANTS]** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Phillipa G. Lilienthal, Esq. (BBO # 646860) (*pro hac vice*)
John A. Duberstein, Esq. (BBO #689230) (*pro hac vice*)
Cara E. Murphy, Esq. (BBO # 709521) (*pro hac vice*)
Schwartz Hannum PC
11 Chestnut Street
Andover, Massachusetts 01810
(978) 623-0900
plilienthal@shpclaw.com
jduberstein@shpclaw.com
cmurphy@shpclaw.com

Marc H. Perry, Esq. (I.D. # 68610)
POST & SCHELL, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103-2808
(215) 587-1000
mperry@postschell.com


Attorneys for Defendants, The Hill School and Ariel Baum

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iv

PRELIMINARY STATEMENT ...................................................................................... 1

PROCEDURAL HISTORY ............................................................................................ 3

DOE'S FACTUAL ALLEGATIONS............................................................................... 3

*Breach Of Contract* ....................................................................................................... 3

*Promissory Estoppel* ..................................................................................................... 5

*Intentional And Negligent Infliction Of Emotional Distress* ......................................... 6

*ADA Discrimination* ..................................................................................................... 6

LEGAL ARGUMENT ..................................................................................................... 7

I.      Standard On Motion To Dismiss For Failure To State A Claim ............................ 7

II.     Doe Fails To State A Claim For Breach Of Contract ......................................... 7

        A.      Judicial Review Is Limited For Internal Disciplinary Proceedings In Private
                Schools............................................................................................................ 8

        B.      Doe Alleges No Facts Suggesting The Court Should Review
                The School's Decision ................................................................................. 10

                1.      The Enrollment Agreement And Handbook Expressly Put Doe On
                        Notice Of The Consequences Of His Actions ...................................... 10

                2.      Doe Admits To The Conduct That Resulted In His Withdrawal ....... 11

                3.      The School Used Its Discretion To Permit Doe A DC Meeting ......... 11

        C.      Doe's Claims Of "Amnesty" Are Without Merit ...................................... 12

III.    Doe Fails To State A Plausible Claim For Promissory Estoppel ......................... 13

        A.      Where There Is A Valid Contract, There Can Be No Promissory Estoppel
                Claim ............................................................................................................. 14

        B.      Doe's Promissory Estoppel Allegations Are Purely Speculative .................. 15

                1.      The Promises Doe Alleges Are Too Vague To Induce Reliance ......... 15

                2.      Doe's Reliance Is Misplaced ................................................................ 15

                3.      Doe Did Not Change His Position In Reliance On the Alleged
                        Promises .............................................................................................. 16

IV.     The Gist Of The Action Doctrine Precludes Doe's Tort Claims ........................... 17

V.      Doe Fails To State A Claim For Intentional Infliction Of Emotional Distress.... 17

VI.     Doe Fails To State A Claim For Negligent Infliction Of Emotional Distress ...... 19

VII.    Doe Fails To State A Claim For Discrimination Under The ADA ....................... 21

        A.      Doe Cannot Adequately Plead The Elements Of ADA Discrimination ......... 21

                1.      Doe Has Not Adequately Pled A Disability............................................ 21

|  |  |  |  |
|---|---|---|---|
| *a.* | ***Doe Has Not Plausibly Alleged A Disability For Substance Use*** | ............ | **22** |
| *b.* | ***Doe Has Not Shown A Major Life Activity Was Impacted*** | ..................... | **23** |
| *c.* | ***Doe's Impairment Is Not "Verifiable To A High Degree Of Certainty"*** | | **25** |
| **2.** | **Doe Was Not Precluded From Receiving A Promised Benefit** | ........... | **25** |
| **3.** | **Doe Was Not Otherwise Qualified To Participate, But For His Disability, And The School Was Not Required To Accommodate His Disability By Forgoing Disciplinary Action** | ......................... | **26** |
| **CONCLUSION** | | ............................................... | **26** |
| **CERTIFICATE OF SERVICE** | | .............................................. | **28** |

### TABLE OF AUTHORITIES

**Cases**

*Abadie v. Riddle Mem'l Hosp.*, 589 A.2d 1143 Pa. Super. Ct. 1991)........................................ 19

*Abington Friends School*, 2022 WL 16722322 (E.D. Pa. Nov. 4, 2022) ................................. 18

*Aetna Casualty & Surety Co. v. Duncan*, 972 F.2d 523 (3d Cir. 1992)................................... 10

*Ankerstjerne v. Schlumberger Ltd.*, 155 Fed. Appx. 48 (3d Cir. 2005) .................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................... 7, 19

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 7

*Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575 (Pa. Super. Ct. 1990)............. 12

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460 (D.N.J. 1998) ......................... 22

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508 (D.N.J. 2008) ..................... 22

*Brown v. Muhlenberg Township*, 269 F.3d 205 (3d Cir. 2001) ................................................ 17

*Bruno v. Erie Ins. Co.*, 106 A.3d 48 (Pa. 2024)....................................................................... 17

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) ................................................ 19

*C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188 (3d Cir.1988)................................ 15

*Carlson v. Arnot–Ogden Mem. Hosp.*, 918 F.2d 411 (3d Cir.1990).........................................14

*CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229 (3d Cir. 2013) .................................... 25, 26

*Constar, Inc. v. National Distribution Ctrs., Inc.*, 101 F.Supp.2d 319 (E.D. Pa., 2000).......... 14

*Corbett v. Morgenstern*, 934 F. Supp. 680 (E.D. Pa. 1996) ................................................... 17

*Cornell Cos. v. Borough of New Morgan*, 512 F.Supp.2d 238 (E.D. Pa. 2007)....................... 14

*Crouse v. Cyclops Indus.*, 745 A.2d 606 (Pa. 2000).............................................................. 14

*David v. Neumann Univ.*, 177 F. Supp. 3d 920 (E.D. Pa. 2016) ............................................. 12

*DMP v. Fay Sch. ex rel. Bd. of Trustees*, 933 F. Supp. 2d 214 (D. Mass. 2013).................... 26

*Doe v. Abington Friends Sch.*, No. 22-0014, 2022 WL 16722322 (E.D. Pa. Nov. 4, 2022)....... 8

*Doe v. Haverford Coll.*, No. 23-299, 2023 WL 2025033 (E.D. Pa. Feb. 14, 2023) ................... 8

*Doe v. The Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799 (E.D. Pa. 2017)......................... 8, 12

*Ecudero-Aviles v. Milton Hershey Sch.*, 1:11–CV–1858, 2012 WL 113660 (M.D. Pa. Jan. 13, 2012)... 21

*Edwards v. Wyatt*, 335 F.3d 261 (3d Cir.2003) ...................................................................... 14

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)................................................... 7, 19

*Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723 (Pa. Super. Ct. 2014)........... 8, 10

*Geness v. Admin. Office of Pa. Courts*, 210 L.Ed.2d 833 (U.S. May 24, 2021)......................... 7

*Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263 (3d Cir. 2020)........................................ 7

*Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454 (4th Cir. 2012)........................ 26

*Harper v. Borough of Pottstown*, No. 11-1939, 2013 WL 1187051 (E.D. Pa. Mar. 21, 2013)............... 19

*Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242 (E.D. Pa. May 13, 2014) ..... 8, 9, 13, 17

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014) ..................................... 20

*Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F.Supp. 96 (E.D. Pa. 1995) ......................... 14

*Josephs v. Pizza Hut of Am., Inc.*, 733 F. Supp. 222 (W.D.Pa.1989)................................... 16

*Josephs v. Pizza Hut of Am., Inc.*, 899 F.2d 1217 (3d Cir.1990)........................................... 16

*Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir.1996)................................................................... 22

*Kimberg v. Univ. of Scranton*, No. 06cv1209, 2007 WL 405971 (M.D. Pa. Feb. 2, 2007) ...................... 8

*Kovalev v. Walmart, Inc.*, No. 22-1217, 2022 WL 16536230 (E.D. Pa. Oct. 28, 2022) ......................... 20

*Lee v. Seton Hill Univ.*, 2017 WL 7513319 (W.D. Pa. Aug. 25, 2017)....................................... 9

*M.E.B. v. J.D.J.*, 1487 MDA 2015, 2016 WL 2647698 (Pa. Super. Ct. May 10, 2016) ........................ 10

*M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp.3d 412 (M.D. Pa. 2014) .......................... 18

*Malleus v. George*, 641 F.3d 560 (3d Cir. 2011) ............................................................. 7
*Massaro Ltd. P'ship (Park W. Two) v. Baker & Taylor Inc.*, 161 F. App'x 185 (3d Cir. 2005)............. 15
*McShea v. City of Phila.*, 995 A.2d 334 (Pa. 2010)............................................................. 8
*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 (W.D. Pa. 2019) ................................. 20, 21
*Mekuns v. Capella Educ. Co.*, 655 F. App'x 149 (3d Cir. 2016)............................................... 9
*Mekuns v. Capella Educ. Co.*, No. 15-1542, 2015 WL 7075825 (E.D. Pa. Nov. 13, 2015) ...................... 9
*Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418 (2001) ........................................ 20
*O'Keefe v. Lehigh Univ.*, No.19-cv-0884-JMY, 2023 WL 137457 (E.D. Pa. Jan. 9, 2023) .................... 9
*Pension Ben Guar. Corp. v. White Consol. Indus. Inc.,* 510 U.S. 1042 (1994)............................... 5
*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .................... 5
*Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755 (Pa. Super. 1991) .................................... 9
*Reardon v. Allegheny Coll.*, 926 A.2d 477 (Pa. Super. Ct. 2007) ........................................... 9
*Reg. of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159 (3d Cir. 2006)..................... 21
*RHJ Med. Ctr. v. City of DuBois*, 754 F. Supp. 2d 723 (W.D. Pa. 2010)..................................... 22, 23, 25
*Shaner v. State Sys. of Higher Educ.*, 40 Pa. D. & C.4th 308 (Com. Pl. 1998)............................... 10
*Shaner v. State Sys. of Higher Educ.*, 738 A.2d 535 (Pa. Commw. Ct. 1999) ................................. 10
*Sharrow v. Bailey*, 910 F. Supp. 187 (M.D. Pa. 1995) ...................................................... 21
*Strausser v. Gertrude Hawk Chocolate, Inc.*, No. 3:15CV2458, 2018 WL 1470796 (M.D. Pa. Mar. 26, 2018) .................................................................................................. 22
*Sulima v. Tobyhanna Army Depot,* 602 F.3d 177 (3rd Cir. 2010) ............................................. 23
*Swartley v. Hoffner*, 734 A.2d 915 (Pa. Super. Ct. 1999).................................................. 7
*Takeda Pharms. U.S.A., Inc. v. Spireas*, No.17-0452, 2017 WL 4401988 (E.D. Pa. Oct. 3, 2017)......... 17
*Thatcher's Drug Store of West Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156 (Pa. 1994) .. 14
*Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.,* 535 Pa. 469 (1994) ............. 15
*Thompson v. U.S.*, No. CV16-3287, 2017 WL 2972679 (E.D. Pa. July 12, 2017)................................ 19
*Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317 (E.D. Pa. 2020) ........................................ 5
*Toney v. Chester Cnty. Hosp.*, 36 A.3d 83 (Pa. 2011) ...................................................... 20, 21
*Toney v. Chester Cnty. Hosp.*, 961 A.2d 192 (Pa. Super. Ct. 2008).......................................... 20
*Udodi v. Stern*, 438 F. Supp. 3d 293, 301 (E.D. Pa. 2020)................................................. 17
*United States v. Semler*, 858 F. App'x 533 (3d Cir. 2021)................................................. 10
*Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x. 129 (3d Cir. 2011) ....................................... 12
*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011) ............................................. 18

## Statutes

42 U.S.C. § 12102(2) ....................................................................................... 23
42 U.S.C. § 12181(7)(J) .................................................................................... 22
42 U.S.C. § 12182(a) ....................................................................................... 22
42 U.S.C. § 12210 .......................................................................................... 23

## Regulations

28 C.F.R. § 41.31(b)(1)(i) ................................................................................. 23
28 C.F.R. §§ 36.104; 36.105 ................................................................................ 25
29 C.F.R. § 1630.2 ......................................................................................... 25
29 C.F.R. § 1630.2(i) ...................................................................................... 25

**PRELIMINARY STATEMENT**

Plaintiff John Doe ("Doe")'s Amended Complaint (the "Am. Complaint") alleges breach of contract, promissory estoppel, negligent infliction of emotional distress ("NIED"), and disability discrimination under Title III of the Americans with Disabilities Act ("ADA") against The Hill School ("Hill" or the "School"), and intentional infliction of emotional distress ("IIED") against the School and Ariel Baum ("Baum"), Hill's Dean of Students, but fails to state any cause of action. Accordingly, Doe's Complaint should be dismissed.

Doe, a student at Hill for less than six months, committed multiple violations of the School's disciplinary code's most serious ("Level 3") offenses: (1) substance use; (2) alcohol and drug possession and distribution; (3) interference with a School investigation; (4) bullying; and (5) disrespectful behavior. The Head of School, Dr. Sylvia Rodriguez Vargas ("Dr. Vargas"), required Doe to withdraw from Hill after a Discipline Committee ("DC") recommended expulsion for Doe's serious act of bullying and disrespectful behavior. For each of Doe's five Level 3 offenses, Dr. Vargas had the discretion, under the plain language of Hill's Student Handbook and the Enrollment Agreement, to require Doe's immediate withdrawal. In response to Doe's conduct violations, the School acted within its discretion and exercised great leniency.

As the Am. Complaint alleges, Doe and his parents were aware of his precarious disciplinary status. First, they knew that Doe would have been expelled in December or January strictly for his drug use, possession, and distribution, unless Doe fully participated in the "I Care" Program. This program is a health- and wellness-based alternative to traditional discipline for a student's own drug use in certain circumstances.

Second, as the Am. Complaint concedes, Doe (who turned eighteen in December 2022) and his parents were told in early January 2023 that Doe was being retroactively suspended and placed on

Conduct Warning (probation) for attempting to interfere with the drug investigation of another student. Doe could have been required to withdraw for this misconduct alone, and the School told Doe then that he needed to faithfully abide by Hill's conduct policy if he wished to remain a member of the Hill community.

Notwithstanding the School's leniency, Doe violated additional School rules just a few weeks later. In early February, Doe admits that he left his dorm room after curfew with four other students and poured a mixture of water and protein powder on the head of a sleeping student. Doe now claims that he should have received a reduced sanction for this bullying act and disrespectful behavior, due to his participation in I Care.

Selectively choosing facts from the Preliminary Injunction hearing and the discovery provided by Hill, Doe amends his complaint, attempting to hold Hill responsible for his own wrongdoing. But courts have repeatedly declined to review the internal disciplinary processes of private schools other than with respect to basic contract principles. Doe has alleged no provision of the Handbook, Enrollment Agreement, I Care Contract, or other relevant policy that limited Hill's discretion to (1) issue a Conduct Warning for Doe's interference with a School investigation, or (2) require withdrawal for bullying and disrespectful behavior. At all times, Doe was subject to the expectations outlined in the Enrollment Agreement, Handbook, and other Hill policies.

In the absence of any allegation in the Am. Complaint to suggest that Hill did not substantially comply with its disciplinary processes and procedures, all of Doe's tort, statutory, and equitable claims amount to nothing more than asking this Court to overrule the School's decision on an internal disciplinary matter. This Court should dismiss all of Doe's claims, as they fail to state a viable claim for relief.

## PROCEDURAL HISTORY

Doe filed an original verified complaint in this Court on March 29, 2023 (the "Complaint"). Doc. No. 1. At the same time, Doe filed a Motion for Preliminary Injunction, seeking to have Doe reinstated as a junior at Hill. Doc. No. 2. After limited discovery and full briefing, the Court heard Doe's Motion for Preliminary Injunction on April 5, 2023 at a hearing which included, among other things, testimony from Baum and Dr. Vargas, as well as from Doe's mother. The Court denied Doe's Motion on April 10, 2023. Doc. No. 22. Doe filed his Amended Complaint on May 20, 2023. Doc. No. 30.

## DOE'S FACTUAL ALLEGATIONS

The following is a summary of Doe's factual allegations contained in his Am. Complaint, which Hill and Baum treat as true for the purposes of their Motion.

*Breach Of Contract*

Doe alleges that a valid contract between Doe and the School was created by the Hill Student Handbook (the "Handbook") and the School's Immediate Care ("I Care") Program "Contract." Doc. No. 30, ¶¶ 96-105. I Care is a health- and wellness-based program that "allows students to get help for themselves or others without a traditional disciplinary response." Doc. No. 30-1 at 95. I Care requires students to participate in ongoing counseling, drug screening, and to abide by the Program's requirements. *Id* at 96-97. I Care has clear disciplinary consequences for violating the program, up to and including required withdrawal. *Id*. After having been discovered using and distributing marijuana, alcohol, and nicotine extensively in December, 2022, Doe was referred to I Care. Doc. No. 30, ¶¶ 96-105. Upon referral to I Care, Doe signed an I Care Contract, in which he agreed to abide by the Program's requirements. Doc. No. 30, ¶¶ 96-105. The primary contract governing Doe's enrollment at Hill — the Enrollment Agreement — forms the contractual foundation between Doe and the School.[1]

---

[1] Doe's parents signed the Enrollment Agreement on his behalf as he was a minor when he enrolled. Doe turned 18 during the school year. The Am. Complaint seeks specific performance of promises to provide an education to Doe per the Enrollment

Doe alleges that Hill breached its contract with him by expelling Doe after he doused a sleeping student in the middle of the night with a mixture of water and protein powder while four other students watched and/or filmed the event and then ran away. Doc. No. 30 ¶¶ 57-58. Doe alleges that this was a "mere prank" for which he should not have received more than a suspension, arguing that other students received suspensions. Doc. No. 30 ¶¶ 53-55, 62. Significantly, two other students who participated to a lesser degree in the events were also expelled. Doc No. 30 ¶¶ 53-55, 62. Doe acknowledges that although the Dorm Parents warned that if those responsible did not step forward, the punishment would be more severe, yet he did not step forward to take responsibility. Doc. No. 30 ¶¶ 61, 62.

Doe claims, even though no DC meeting was required under School policies, that the School conducted a "sham" DC meeting in which the outcome was preordained. Doc. No. 30 ¶¶ 14, 42. Doe alleges that Baum (who did not vote in the DC and did not have the ultimate decision-making authority, which Doe concedes was reserved for the Head of School) engineered Doe's expulsion, allegedly due to a "seemingly...personal vendetta" towards Doe. Doc. No. 30 ¶¶ 14, 42.

Doe alleges that when Baum issued a Conduct Warning in January, for Doe's (admitted) attempted interference with the drug test of another student in early December, Baum was trying to "set Doe up" for future expulsion. *See* Doc No. 30 ¶¶ 12, 34-36, 43, 44. Doe alleges that Baum was somehow "pad[ding] Doe's disciplinary record," to "lay the groundwork for future punishment" in violation of School policies. *See* Doc No. 30 ¶¶ 12, 43, 44.

Doe alleges that he should not have been given a Conduct Warning for attempting to interfere with another student's drug test or expelled for bullying and disrespectful behavior because his referral to the I Care program granted him "amnesty" from all discipline. *See*, *e.g.*, Doc No. 30 ¶¶ 7, 9-11, 40, 47, 48. Doe asserts that, because he admitted his misconduct to administrators while participating in the

---

Agreement.

I Care program, he should not have received disciplinary consequences for any of his conduct, arguing that he should have only been suspended for his participation in the bullying incident. Doc. No. 30 ¶¶ 7, 9, 33-35.

Doe cites no provision of the Handbook, Enrollment Agreement, or I Care Contract that supports his assertion of amnesty or that diminishes the Head of School's discretion in disciplinary matters. *See*, *e.g.*, Doc No. 30 ¶¶ 7, 10, 40, 47, 48; Doc. No. 30-1 at 95-96.

*Promissory Estoppel*

Doe argues that a contract governed his enrollment at Hill, *see infra* and Doc. No. 30 ¶¶ 96-105, which entirely precludes Doe's promissory estoppel claim as a matter of law. Nonetheless, Doe alleges that Hill made informal promises to him and to his parents, which they relied on to their detriment, and to which Hill should thus be bound. Doe seems to claim that the School promised him "amnesty" from discipline if he participated in the I Care Program after winter recess, and therefore Doe's parents decided to send him back to Hill. Doc. No. 30 ¶¶ 10, 11, 39, 40.

Doe does not allege that any Hill administrator made promises to him or his parents other than the language in the Handbook or I Care Contract. Instead, he focuses on allegations that internal discussions between School administrators indicate that placing Doe on Conduct Warning would "violate the School's rules." *See, e.g.,* Doc. No. 30 ¶¶ 12, 43 (citing an email provided to Plaintiff in discovery for the PI Motion reflecting "internal discussions" between Baum and Dr. Vargas). A copy of that email, referenced in the Am. Complaint, is attached here as Exhibit B ("Ex. B").[2]

---

[2] This Memorandum refers to certain documents which are referred to, relied upon, or are integral to the Am. Complaint, but which are not attached thereto. Normally, to "decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) *cert. denied,* 510 U.S. 1042 (1994). "However, an exception to the general rule [governing 12(b)(6)] is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 326 (E.D. Pa. 2020).

The Am. Complaint alleges that in January 2023, just after winter recess, Baum emailed Doe's parents to explain in detail the School's decision to place Doe on Conduct Warning and retroactively suspend him. Doc. No. 30 ¶¶ 45-47. Doe and his parents admit that they were not "focused" on this communication and did not heed or appreciate its express warnings. Doc. No. 30 ¶¶ 45-47. A copy of that email, referenced in the Am. Complaint, is attached here as Exhibit C ("Ex. C."). But, by his own allegations, Doe was fully aware of his tenuous condition. Doc. No. 30 ¶¶ 46-47, *see also* Ex. C at 1-2.

*Intentional And Negligent Infliction Of Emotional Distress*

Doe claims emotional distress resulting from the School's or Baum's reckless indifference or intentional actions in imposing "unwarranted punishments" against Doe, including "wrongful retroactive discipline" and expulsion. Doe alleges that the School and Baum took these actions with knowledge that Doe was participating in the I Care Program and that Doe suffered from psychological ailments such as anxiety and depression. Doc. No. 30 ¶¶ 112-114, 116-118. Doe alleges that he "suffered … great pain of mind and body, shock, and emotional distress," and "experienced physical manifestations of emotional distress, including shame, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life" as well as "worsening depression, isolation and anxiety." Doc. No. 30 ¶¶ 114, 116.

*ADA Discrimination*

Doe alleges that he was discriminated against under Title III of the ADA based on his "history of substance use," which he alleges is a disability because he was "participating in a supervised rehabilitation program." Doc. No. 30 ¶¶ 92-94. Doe claims that "his past substance abuse substantially interfered with and limited a major life activity," Doc. No. 30 ¶¶ 92-94, but the only limitation that Doe alleges is that he returned home with his parents four days early for winter recess in December 2022. Doc. No. 30 ¶¶ 41, 92. Doe claims that he was otherwise qualified to fully participate as a student, and was doing so successfully, but was discriminated against when the School required Doe's withdrawal.

6

Doc. No. 30 ¶¶ 93-94. Doe asserts that this was discriminatory because the School was motivated by its knowledge of Doe's past substance use and participation in the I Care program. Doc. No. 30 ¶¶ 55, 87. Doe also claims as evidence of discrimination that students involved in other unrelated incidents involving pouring water on students were not expelled. Doc. No. 30 ¶ 88.

## LEGAL ARGUMENT

### I.   Standard On Motion To Dismiss For Failure To State A Claim

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] After *Iqbal and Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007), "conclusory…allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).

Plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. A court must look at the well-pleaded components of the complaint and evaluate "whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Courts will grant a Rule 12(b)(6) motion if the factual allegations in the complaint are insufficient "to raise a right to relief above the speculative level." *Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 269 (3d Cir. 2020), *cert. denied*, 210 L.Ed.2d 833 (U.S. May 24, 2021).

### II.   Doe Fails To State A Claim For Breach Of Contract

In Pennsylvania, the relationship between students and private schools is contractual. *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999); *Doe v. Abington Friends Sch.*, No. 22-0014, 2022 WL

---

[3] Unless otherwise specified, all internal citations and quotations are omitted.

16722322, at *3 (E.D. Pa. Nov. 4, 2022). "The contract between a private institution and a student is comprised of written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Kimberg v. Univ. of Scranton,* No. 06cv1209, 2007 WL 405971, *3 (M.D. Pa. Feb. 2, 2007); *Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at *2 (E.D. Pa. May 13, 2014). To successfully plead a breach of contract, a plaintiff must allege: (1) the existence of a contract and its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *McShea v. City of Phila.*, 995 A.2d 334, 340 (Pa. 2010); *Doe v. Haverford Coll.*, No. 23-299, 2023 WL 2025033, at *3 (E.D. Pa. Feb. 14, 2023); Doc. No. 30 ¶¶ 96-105.

A.    **Judicial Review Is Limited For Internal Disciplinary Proceedings In Private Schools**

The agreement between a student and a private school imposing school discipline has been treated by the courts like any other contract. *See Harris*, 2014 WL 1910242, at *2 ("[W]e review the agreement between the parties concerning disciplinary procedures, contained within a portion of the student handbook… as we would any other agreement between two private parties.").

Because the student-private school relationship is governed by normal contract principles, "students who are being disciplined are entitled **only** to those procedural safeguards which the school specifically provides" in the agreement. *Doe v. The Trs. of the Univ. of Pa.*, 270 F. Supp. 3d 799, 810 (E.D. Pa. 2017) (emphasis added); *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. Ct. 2014). Courts have repeatedly been "reluctant to interfere in the disciplinary proceedings" of a private school. *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super.

1991); *see also O'Keefe v. Lehigh Univ.*, No.19-cv-0884-JMY, 2023 WL 137457, at *9 (E.D. Pa. Jan. 9, 2023).

If, as this Court has held, the "plaintiff chooses to amend the Complaint, he should be mindful that '[w]hen a contract so specifies, generally applicable principles of contract law will suffice to insulate the institution's internal, private decisions from judicial review.'" *Harris*, 2014 WL 1910242, at *3 (*citing Reardon v. Allegheny Coll.*, 926 A.2d 477, 480-81 (Pa. Super. Ct. 2007)); *Mekuns v. Capella Educ. Co.*, No. 15-1542, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015), *aff'd*, 655 F. App'x 149 (3d Cir. 2016) ("'The decision of the university president is final' sufficiently insulates the decision from judicial review...").

Where a school has broad discretion in all disciplinary matters—which is adequate as a matter of law to insulate the merits of the School's decision from intensive review—and the plaintiff cannot show that the unambiguous terms of the handbook, enrollment agreement, and other policies were breached, so Plaintiff's contract claim is "forbidden by the terms of both the [Agreement] and the relevant case law." *Lee v. Seton Hill Univ.*, 2017 WL 7513319, at *5 (W.D. Pa. Aug. 25, 2017). In this case, Hill's Handbook provides that a "student who fails to fulfill the[ir] basic responsibilities may lose the privilege of attending The Hill School, either temporarily (suspension), or permanently (required withdrawal)," and further provides that, for any Level 3 offense, the "Head of School, without convening the Discipline Committee, **has the right to require the immediate withdrawal of any student at any time.**" Doc. No. 30-1 at 8, 69-70 (emphasis added). The Enrollment Agreement states that the Head of School "has the **sole discretion to require a student to withdraw, without the need to call for a Discipline Committee meeting**, for the student's violation of any major School rule, accumulation of violations of minor School rules, suspected or confirmed criminal activity, and/or being a dangerous, negative, or detrimental influence on the School and/or its community." A copy of the Enrollment

Agreement is attached here as Exhibit A ("Ex. A") (emphasis added).[4] The Enrollment Agreement, though not mentioned in the Am. Complaint, is integral to the agreement between Doe and the School, since it promises Doe an education in exchange for certain promises by Doe and his parents, including following the Handbook.

**B.    Doe Alleges No Facts Suggesting The Court Should Review The School's Decision**

**1.    The Enrollment Agreement And Handbook Expressly Put Doe On Notice Of The Consequences Of His Actions**

Not only is Hill's disciplinary discretion broad, but it is indisputable that Doe was fully aware of the many ways that he was "subject to the condition that he comply [at all times] with [Hill's] scholastic and disciplinary requirements[.]" *Gati*, 91 A.3d at 731. Doe's Am. Complaint demonstrates that Doe (1) was on notice of the discipline policies detailed in Hill's Handbook and the Enrollment Agreement, and (2) violated these policies. Doc. No. 30 ¶¶ 35, 47, 51-63. The Handbook contains a non-exclusive list of the most serious offenses, Doc. No 30-1 at 70-78, including *all five* of Doe's Level 3 offenses: (1) substance use; (2) possession and distribution of alcohol and drugs, including the distribution of marijuana, nicotine and alcohol,[5] Doc. No. 30-1 at 71, 74; (3) bullying, Doc. No. 30-1 at 73; (4) disrespectful behavior, Doc. No. 30-1 at 73; and (5) interference with a School investigation, Doc. No.

---

[4] Doe ratified and is seeking to enforce the Enrollment Agreement by requesting that the Court issue an injunction returning him to Hill. Doc. No. 30 at 38. Doe did not sign the enrollment agreement, but under Pennsylvania law, an agreement signed by a minor is voidable, not void, unless disclaimed by the minor upon reaching the age of majority. *Shaner v. State Sys. of Higher Educ.*, 40 Pa. D. & C.4th 308, 312–14 (Com. Pl. 1998), aff'd, 738 A.2d 535 (Pa. Commw. Ct. 1999). A minor can ratify or affirm such a contract after reaching majority, rendering the contract enforceable. *See Aetna Casualty & Surety Co. v. Duncan*, 972 F.2d 523, 526 (3d Cir. 1992). By remaining enrolled at Hill after his 18th birthday, and seeking re-enrollment now, Doe ratified and affirmed the Enrollment Agreement. *See M.E.B. v. J.D.J.,* 1487 MDA 2015, 2016 WL 2647698, at *5 n.2 (Pa. Super. Ct. May 10, 2016).

[5] Doe contends that "Mr. Baum incorrectly alleged … that Doe had been involved in the 'distribution' of substances on campus," because Doe and his peer group were simply assisting one another in obtaining THC and nicotine, sharing what they had, and reimbursing each other when someone was able to purchase [THC, etc.] for themselves and their friends." Doc. No. 30 at 36. The definition of distribution for purposes of illegal drugs under federal law does not depend on the "sale" of drugs, as Doe suggests. Doc. No. 30 at 36. Rather, there is a line between distribution and mere possession, but it is not an exchange of money that defines it. The Third Circuit has recognized that there can be distribution without payment. *See e.g. United States v. Semler*, 858 F. App'x 533, 536 (3d Cir. 2021).

30-1 at 74.  The Handbook also details the <u>consequences</u> for violating the School's most serious rules: "The Level 3 Offenses comprise our major rule infractions, which most likely will result in a Discipline Committee or Honor Council hearing. A student who fails to fulfill the basic responsibilities may lose the privilege of attending The Hill School, either temporarily (suspension), or permanently (required withdrawal)." Doc. No. 30-1 at 70.

### 2. Doe Admits To The Conduct That Resulted In His Withdrawal

Doe, with specific notice of Hill's conduct requirements, admits to the bullying conduct and disrespectful behavior that resulted in his withdrawal. Doc. No. 30 ¶¶ 56-59, 61-63 *See also* Doc No. 30-1, at 114-15 (Charging Document attached to Am. Complaint). Doe and two other students involved in the incident were required to withdraw. Doc. No. 30 ¶ 87. Two additional students received lengthy suspensions. Doc. No. 30 ¶ 87.

### 3. The School Used Its Discretion To Permit Doe A DC Meeting

As stated above, the Head of School had the authority and discretion to require Doe to withdraw immediately for each of Doe's final offenses, with no further process or DC meeting. Doc. No. 30-1 ¶69-70; Ex. A at 2. Instead of requiring immediate withdrawal, however, the School used its discretion to allow Doe a DC meeting. Doc. No. 30-1 ¶60, 68. Doe admits that he was permitted all the procedural elements involved in a DC meeting, *i.e.*, to have a faculty member and another student serve as formal supporters who were allowed to speak on Doe's behalf, a question-and-answer period to clarify his disciplinary case and history, and a chance for Doe to speak on his own behalf. Doc. No. 30-1 at 60, 68; Doc. No. 30 ¶¶ 67, 76. Doe's allegations demonstrate the extensive disciplinary process afforded to him. Ignoring the facts, Doe argues that the DC process was a "sham" simply because he was required to withdraw after he committed five Level 3 offenses, any one of which warranted expulsion. Doc. No. 30 ¶¶ 5, 64-88; Doc. No. 30-1 at 60, 69-70.

**C.       Doe's Claims Of "Amnesty" Are Without Merit**

Doe alleges that his Conduct Warning was impermissibly considered in the DC meeting because the School promised him "amnesty" for all his past conduct upon referral to the I Care program, yet Doe's claims do not suffice to allege a breach of contract. *See, e.g.*, Doc No. 30 ¶¶ 7, 10, 40, 47, 48, 124. A student's breach of contract "allegations must relate to a specific and identifiable promise that the school failed to honor." *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x. 129, 133 (3d Cir. 2011); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016). Moreover, Hill need only comply with its own rules, and that compliance need not be strict, only "substantial." *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. Ct. 1990) ("The general rule … has been that where a private university or college establishes procedures for the suspension or expulsion of its student, *substantial compliance* with those established procedures must be had before a student can be suspended or expelled."); *see also The Trs. of the Univ. of Pa*, 270 F. Supp. 3d at 810.

The goal of I Care is to encourage students to get help for substance use when they might not otherwise come forward. Doc. No. 30-1 at 95-96. I Care provides a diversion from standard discipline for a student's drug use. Students who choose not to participate in I Care, or who are not truthful upon entry into I Care, are immediately expelled. Doc. No. 30-1 at 95 ("A student referred to I Care must cooperate fully, honestly, and immediately about their substance use/possession [otherwise] they forfeit I Care eligibility and will be subject to a traditional disciplinary response, including the very likely possibility of required withdrawal.").

To "activate the I Care process, students must communicate with any Hill employee about their own substance use/possession, or use/possession by another student, BEFORE any school employee learns of, suspects, begins investigating, observes, detects, or discovers that student's substance use/possession or a violation of any School rule that subsequently reveals substance use/possession."

Doc. No. 30-1 at 95-97. There is no mention whatsoever of any promise regarding amnesty from discipline for violations unrelated to a student's own substance use or for subsequent or separate acts. Doc. No. 30-1 at 95. The I Care Contract itself states only that the student must adhere to conditions, such as refraining from further use of all substances, to avoid disciplinary consequences for substance use. Doc. No. 30-2 at 1.

In addition, as Doe was aware, the School was conducting an investigation into drug activity on campus when it learned about Doe's attempt to interfere with another student's drug test. Doc. No. 30 ¶¶ 8, 27, 35, 37, 38, Ex. B at 1-2. As the Am. Complaint references, Baum and Dr. Vargas deliberated internally regarding discipline for Doe's Level 3 offense of interference with a School investigation. Doc. No. 30 ¶¶ 12, 43, 47; Doc. No. 30-1 at 74. Their email reflects only their broad discretion to decide what discipline was appropriate. *Id.* Specifically, they discussed that while I Care "protects" a student from discipline related to "substance usage and distribution and even other rules broken **related to that usage**," but "in the spirit of the rules and procedures it can be well-argued that the cleansing agent distribution **is legit discipline and not I Care**…" *See* Ex. B at 2. Doc. No. 30 ¶ 43. (emphasis added). Neither this email, nor any other allegations in the Am. Complaint, support Doe's assertion that the School violated its policies or any contract with Doe.

"Conclusory allegations such as these, with no clear averments as to what statement or regulations included in the Handbook (which the parties appear to agree for present purposes was a contract) were violated or breached, are insufficient to survive a motion to dismiss." *Harris*, 2014 WL 1910242, at *3. Accordingly, Doe's contract claims should be dismissed by this Court.

## III.  Doe Fails To State A Plausible Claim For Promissory Estoppel

As the party claiming estoppel, it is Doe's burden to establish all the elements of such a claim, *i.e.,* that: "1) the promisor made a promise that he should have reasonably expected to induce action or

forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." *Edwards v. Wyatt,* 335 F.3d 261, 277 (3d Cir.2003) (citing *Crouse v. Cyclops Indus.,* 745 A.2d 606, 610 (Pa. 2000)). *See also Thatcher's Drug Store of West Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156, 160 (Pa. 1994). Doe's estoppel claim fails as a matter of law because there is a valid contract governing Doe's relationship with the School, and he fails to meet his burden to allege the elements of promissory estoppel.

### A.      Where There Is A Valid Contract, There Can Be No Promissory Estoppel Claim

Doe explicitly asserts contractual protections under the Handbook and I Care contract relating to alleged promises of amnesty "upon which Doe relied to his detriment;" the same conduct for which he asserts promissory estoppel. Doc. No. 30 ¶¶ 122-33.[6] Promissory estoppel claims can *only* exist in the absence of a contract. *Carlson v. Arnot–Ogden Mem. Hosp.*, 918 F.2d 411, 416 (3d Cir.1990). If the Court finds a valid contract between Hill and Doe, the terms of that agreement govern, and the promissory estoppel claim must be dismissed. *Constar, Inc. v. National Distribution Ctrs., Inc.*, 101 F.Supp.2d 319, 323 (E.D. Pa., 2000) (dismissing promissory estoppel claim where express contract existed); *Iversen Baking Co. v. Weston Foods, Ltd.*, 874 F.Supp. 96, 102 (E.D. Pa. 1995). S*ee also*, *Cornell Cos. v. Borough of New Morgan*, 512 F.Supp.2d 238, 266 n. 19 (E.D. Pa. 2007) ("[a] finding of a valid contract would prevent a party from recovering for either [promissory estoppel or unjust enrichment].").

---

[6] Doe also mixes and matches his own understanding, expectations, and alleged reliance on Hill's promises with those of his parents. ¶¶ 129-32. Doe's parents are not litigants in this matter, but even if they were, they have a valid written contract with Hill—the Enrollment Agreement—and so promissory estoppel would not apply. *Carlson*, 918 F.2d at 416.

**B.    Doe's Promissory Estoppel Allegations Are Purely Speculative**

**1.    The Promises Doe Alleges Are Too Vague To Induce Reliance**

Promises alleged to support a claim of promissory estoppel must be express and definite enough to justify reliance by the promisee. *C & K Petroleum Prods., Inc. v. Equibank,* 839 F.2d 188, 192 (3d Cir.1988). While the Am. Complaint claims that the School "made several promises on which Doe relied to his detriment," Doe only alleges one: that Doe was told that "his participation in the I Care program would be non-disciplinary." Doc. No. 30 ¶¶ 123-24. As with Doe's contract claim, this "promise" is too indefinite to survive.

In fact, Doe acknowledges that I Care "promises students will not be disciplined <u>for their substance use</u> or their participation in I Care" if they comply with I Care requirements. Doc. No. 30 ¶ 31. I Care's non-disciplinary nature is limited to the student's own substance use and related activity and only when School officials would not otherwise have discovered it. Doc. No. 30-1 at 95-96; *see also* Ex. C at 1-2. All other alleged promises in the Am. Complaint are too vague and/or conclusory at best.

**2.    Doe's Reliance Is Misplaced**

Even if Doe had alleged a definite promise by Hill, his reliance was unreasonable. *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.,* 535 Pa. 469, 473 (1994) ("A party asserting a claim of estoppel has the burden of establishing all the essential elements…[including] the reasonableness of the promisee's reliance."); *Massaro Ltd. P'ship (Park W. Two) v. Baker & Taylor Inc.*, 161 F. App'x 185, 187–88 (3d Cir. 2005) ("The enforceability of the promise depends on … the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought …") (citing Restatement § 90 cmt. b). Doe was informed of his Conduct Warning status on January 5 and was told that he faced an increased risk of serious disciplinary action for future

15

misconduct. This fact belies Doe's assertion that he could not be disciplined for future conduct, given his participation in I Care. Doc. No. 30 ¶¶ 45-46; Ex. C at 1-2.

Doe's allegations, to succeed, must rely on more than just his own subjective understanding. The "reliance must be based on the promises of the party to be bound by the estoppel, not simply on the judgment of the promisee." *Josephs v. Pizza Hut of Am., Inc.*, 733 F. Supp. 222, 227 (W.D.Pa.1989), *aff'd,* 899 F.2d 1217 (3d Cir.1990). Nowhere do the School's policies state that a student has amnesty for any and all contemporaneous (or subsequent) misconduct simply because the student disclosed it to administrators while participating in I Care. Doc. No. 30 ¶ 7, 9-11, 40, 47-48. Doe's allegation that the terms of the I Care program, which "allows students to get help for themselves or other students without a traditional disciplinary response," means that the School made a promise of complete amnesty for all of Doe's misconduct is not objectively reasonable.  Doc. 30-1 at 95.; Doc. No. 30 ¶ 7, 9-11, 40, 47-48.

### 3.     Doe Did Not Change His Position In Reliance On the Alleged Promises

To allege promissory estoppel, Doe must allege that his action "amounted to a substantial change of position." *Ankerstjerne v. Schlumberger Ltd.*, 155 Fed. Appx. 48, 51 (3d Cir. 2005). Doe alleges no substantial change in position. On the contrary, he alleges only that he "made the decision to remain at the School and to participate in the I Care program…" based on an alleged promise that if he came back after winter recess, he would be protected from all discipline, and that if he had known about the Conduct Warning, he would not have returned. Doc. No. 30 ¶¶ 130-31. Doe was told about the Conduct Warning and its ramifications at the beginning of the winter term. Doc. No. 30 ¶ 46; Doc. No. 30-1 at 65; Ex. C at 1-2. Doe remained at the School for the winter term until his expulsion in February. He still seeks readmission to Hill, contrary to the allegations that he "only" made the decision to remain at Hill due to the School's promise of "amnesty." Accordingly, Doe's estoppel claim should be dismissed by this Court.

## IV.     <u>The Gist Of The Action Doctrine Precludes Doe's Tort Claims</u>

Pennsylvania recognizes the "gist of the action" doctrine, whereby a contracting party is unable to assert a tort claim against another party when the essence of the claim is a breach of contract. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68-69 (Pa. 2024). This principle aims to "maintain the conceptual distinction between breach of contract claims and tort claims," and depends on the nature of the duty alleged. *Takeda Pharms. U.S.A., Inc. v. Spireas*, No.17-0452, 2017 WL 4401988, at *14 (E.D. Pa. Oct. 3, 2017). "If the facts alleged demonstrate that the duty breached was one created by the terms of the parties' contract, then the claim is one for breach of contract," and the gist of the action doctrine applies. *Udodi v. Stern*, 438 F. Supp. 3d 293, 301 (E.D. Pa. 2020).

In this instance, all of Doe's allegations arise from his enrollment at Hill and the School's application of its written policies—all of which are part of the contract under Pennsylvania law. *Harris*, 2014 WL 1910242, at *2. This includes the allegations of unwarranted punishments at the heart of Doe's tort ("IIED" and "NIED") claims, which fail as a matter of law as attempts to recast a contract claim as a tort. Accordingly, all of Doe's tort claims should be dismissed by this Court.

## V.     <u>Doe Fails To State A Claim For Intentional Infliction Of Emotional Distress</u>

Doe's allegations do not begin to describe the high standard of harm under Pennsylvania law that must be alleged to succeed on an IIED claim. An IIED claim requires proof that: (1) the defendant's conduct was extreme and outrageous; (2) the conduct caused the plaintiff severe emotional distress; and (3) the defendant acted intending to cause such distress or with knowledge that it was "substantially certain" to occur. *Brown v. Muhlenberg Township*, 269 F.3d 205, 217-18 (3d Cir. 2001). An IIED claim also requires evidence of some sort of physical injury, harm, or illness related to the distress. *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996).

Whether alleged conduct could be regarded as extreme and outrageous is a threshold inquiry for the court. *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F.Supp.3d 412, 430 (M.D. Pa. 2014). The Pennsylvania Supreme Court has held that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998).

None of Doe's allegations come close to constituting extreme or outrageous conduct. Doe claims that Hill, and Baum in his capacity as Dean of Students, acted intentionally or with reckless indifference in "imposing unwarranted punishments against him in connection with the non-disciplinary I Care program and in connection with the watering prank," and that they were "callous" because they knew he suffered from "anxiety, depression, and other psychological ailments" and should have permitted him to remain at school instead of requiring him to withdraw. Doc. No. 30 ¶ 116-119. Doe ascribes motivations to Baum with no factual allegations to support those conclusory claims. *Id*. Doe's claims, even if true, do not approach the "extreme and outrageous" conduct required to support a claim of IIED. This Court has held in similar circumstances that the plaintiff-student's allegations did not support a claim of "outrageous" or "extreme" conduct. *Abington Friends School,* 2022 WL 16722322, at *5–6 (E.D. Pa. Nov. 4, 2022) ("The conduct underlying the IIED claim is the school's alleged failure to follow its policies for investigating and resolving bullying complaints, something that is neither extreme nor outrageous enough to meet the requisite standards under Pennsylvania law, and it would be futile for Plaintiffs to amend.").

Nor do Doe's allegations permit an inference that discovery will yield evidence of conduct that would rise to this high standard. *Warren Gen. Hosp. v. Amgen Inc.,* 643 F.3d 77, 84 (3d Cir. 2011) (Complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus

enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'") (*citing Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

In addition, Doe's alleged "distress" is merely a list of general harms: "great pain of mind and body, shock, emotional distress including worsening depression and anxiety, and physical manifestations of emotional distress, including shame, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life[.]" Doc. No. 30 ¶ 121. These are examples of allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth" afforded well-pleaded allegations under Rule 12(b)(6), and, therefore, the Court should dismiss Doe's IIED claims. *Ashcroft,* 556 U.S. at 679; *see also Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth."). *See Abadie v. Riddle Mem'l Hosp.*, 589 A.2d 1143, 1145 Pa. Super. Ct. 1991) (listing allegations of psychological factors affecting plaintiff and causing "injuries" were inadequate to plead physical harm).

## VI.   Doe Fails To State A Claim For Negligent Infliction Of Emotional Distress

To plead NIED in Pennsylvania, a plaintiff must allege the traditional elements of negligence and then also at least one of the following elements: "(1) that defendant had a contractual or fiduciary duty toward him, (2) that plaintiff suffered a physical impact, (3) that plaintiff was in a 'zone of danger' and at a risk of an immediate physical injury, or (4) that plaintiff had a contemporaneous perception of tortuous (sic) injury to a close relative." *Thompson v. U.S.*, No. CV16-3287, 2017 WL 2972679, at *3 (E.D. Pa. July 12, 2017); *see Toney v. Chester Cnty. Hosp.,* 961 A.2d 192, 197–98 (Pa. Super. Ct. 2008). Further, a Plaintiff alleging NIED "must suffer immediate and substantial physical harm." *Harper v. Borough of Pottstown*, No. 11-1939, 2013 WL 1187051, at *11 (E.D. Pa. Mar. 21, 2013).

Doe does not specify, but it appears he is attempting to proceed under the first category—a contractual or fiduciary duty—or at least that is the only category even possibly relevant. Doe's

allegations, taken on their face, fail to establish an NIED claim. The cases in which courts have found

such contractual or fiduciary relationships are few and unlike Doe's situation.

In *Toney*, 961 A.2d at 200, the Court held that a mother who gave birth to a child with severe

physical deformities could bring an NIED claim against the hospital and staff who performed a pelvic

ultrasound and reported no physical abnormalities. On appeal, the Supreme Court of Pennsylvania was

evenly divided as to whether even such a substantial relationship (hospital/obstetrician—patient) could

support an NIED claim. *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 100 (Pa. 2011).[7]

Since *Toney*, Pennsylvania's lower courts have limited the contractual and fiduciary relationships

that can give rise to NIED claims to a narrow set of doctor-patient relationships and adoptions. *See*

*Kovalev v. Walmart, Inc.*, No. 22-1217, 2022 WL 16536230 at *5 (E.D. Pa. Oct. 28, 2022). *See*

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 n.8 (E.D. Pa. 2014) (explaining that Pa. courts

have <u>not</u> found a special relationship in employer-employee, lender-borrower, casino-patron, airline-

passenger, or contractor-building-owner relationships).

Courts have expressly refused to include the student-private school relationship under the

"contractual or fiduciary" category. *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 593–94

(W.D. Pa. 2019) ("Based on the caselaw, the Court concludes that, absent special circumstances not

present here, the Pennsylvania courts would not extend liability for the NIED tort to a case involving a

relationship between a school and its student.").[8]

Even if a special relationship were found, Doe's claim would still fail because he alleges no facts

presenting a reasonable inference that he "experienced compensable emotional harm." Compensable

---

[7] *Toney* is "persuasive only" as a split decision in favor of affirmance only. *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 592 (W.D. Pa. 2019).

[8] Underscoring the points made above, this NIED holding is justified by the fact that, under Pennsylvania law, the relationship between student and school is "purely contractual," *Mekuns v. Capella Educ. Co.*, No. CV 15-1542, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015), *aff'd*, 655 F. App'x 149 (3d Cir. 2016) and is reviewed like any other agreement between two private parties. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 428 (2001).

emotional harm is not the type of harm that a reasonable person is expected to bear. *Toney*, 36 A.3d at 95. Rather, such emotional distress must be a "visceral and devastating assault on the self... resembl[ing] physical agony in its brutality." *Toney*. 26 A.3d at 95; *MDB*, 386 F. Supp. 3d at 594. Doe pleads nothing like this. Doc. No. 30 ¶¶ 106-14.

## VII.    Doe Fails To State A Claim For Discrimination Under The ADA

Under Title III of the Americans with Disabilities Act ("ADA"), it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a). Hill is a "place of education" under the statute and, accordingly, a "public accommodation" under 42 U.S.C. § 12181(7)(J). Hill is therefore subject to Title III of the ADA. *Reg. of Mercersburg Coll. v. Republic Franklin Ins. Co*., 458 F.3d 159, 165 (3d Cir. 2006).

### A.    Doe Cannot Adequately Plead The Elements Of ADA Discrimination

To state a claim under Title III of the ADA, a plaintiff must establish that he or she: (1) has a disability; (2) was discriminated against on the basis of that disability; and (3) was thereby denied goods or services; (4) by a place of public accommodation by the owner or operator of that facility. *Sharrow v. Bailey,* 910 F. Supp. 187, 191 (M.D. Pa. 1995); *Ecudero-Aviles v. Milton Hershey Sch.*, 1:11–CV–1858, 2012 WL 113660, at *5 (M.D. Pa. Jan. 13, 2012). Hill acknowledges that the School is a public accommodation under Title III.

#### 1.    Doe Has Not Adequately Pled A Disability

The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Kelly v. Drexel Univ.*, 94 F.3d 102,

105 (3d Cir.1996); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 475 (D.N.J. 1998). Doe

alleges a physical or mental impairment: substance use.

a.     *Doe Has Not Plausibly Alleged A Disability For Substance Use*

To qualify as disabled, a plaintiff must first show that he is afflicted by a physical or mental

impairment covered by the ADA, which, under certain circumstances, may include drug addiction

(though the mere fact of drug use is not sufficient). *See* 28 C.F.R. § 41.31(b)(1)(i); *RHJ Med. Ctr. v. City

of DuBois*, 754 F. Supp. 2d 723, 760 (W.D. Pa. 2010) (methadone patients who had to demonstrate

suffering from addiction for one year to gain admission to federal clinic qualified as disabled).

Doe alleges that he "is a disabled person within the meaning of the Americans with Disabilities

Act (ADA)." Doc. No. 30 ¶ 92. Doe asserts that his "history of substance use is specifically recognized

as a disability under the ADA, because he is 'participating in a supervised rehabilitation program and is

no longer engaging in such use,'" citing 42 U.S.C. § 12210. Doc. No. 30 ¶ 92. But Doe misreads the

statute. The ADA does not state that being in drug treatment makes a person disabled under the Act.

Rather, users of illegal drugs are *excluded* from ADA coverage as a general matter, but § 12210

provides an exception if the person has stopped using for a substantial time or is currently in a treatment

program. § 12210(b)(2).

Doe appears to assert "per se" disability status for his substance use. However, "in the Third

Circuit, neither alcohol addiction nor drug addiction is a *per se* disability under the ADA, either alcohol

or drug addiction could constitute a disability if, under the facts of a given case, such addiction meets the

ADA definition of disability." *Strausser v. Gertrude Hawk Chocolate, Inc.*, No. 3:15CV2458, 2018 WL

1470796, at *3 (M.D. Pa. Mar. 26, 2018); *RHJ*, 754 F. Supp. 2d at 755. In other words, use of illegal

drugs does not constitute a disability under the ADA. *Bowers v. Nat'l Collegiate Athletic Ass'n,* 563 F.

Supp. 2d 508, 532 (D.N.J. 2008) (Allegations of past substance use and treatment provided no "basis for

the Court to rule as a matter of law that Bowers was perceived as being disabled or that he had a record of impairments.").

Unlike *RHJ*, where heroin addicts were admitted to a methadone clinic after a year-long wait, Doe alleges only a few months of substance use, involving marijuana and nicotine, and not perceived or treated until after Doe completed a full semester of high school at Hill. Doc. No. 30 ¶¶ 8, 27; *RHJ*, 754 F. Supp. 2d 723, 760. Doe alleges only that he "used marijuana and tobacco products as a means of managing his depression and anxiety as well as a way of fitting in with his peers" at Hill. Doc. No. 30 ¶ 27. Doe's alleged dependency is not comparable in duration or severity to the patients in *RHJ*. While Doe was allegedly using, he completed the fall semester, never self-reported use, and neither the School nor his parents were aware until his classmate was disciplined and implicated Doe. Doc. No. 30 ¶ 8, 27. Doe fails to allege a disability.

        b.    *Doe Has Not Shown A Major Life Activity Was Impacted*

Under the ADA, Doe must also show that, by virtue of the nature of his impairment, a major life activity was implicated. Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. §§ 36.104; 36.105; *see also Sulima v. Tobyhanna Army Depot,* 602 F.3d 177 (3rd Cir. 2010) *citing* 29 C.F.R. § 1630.2(i). The EEOC guidelines suggest that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: the condition under which the individual performs the major life activity as compared to most people in the general population; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity. 29 C.F.R. § 1630.2

None of Doe's allegations show that he suffered a substantial impairment of a major life activity due to any disability. Doe's claim that his "past substance use substantially interfered with and limited a major life ability (sic)—his ability to attend high school, as reflected in his required separation from the School in December 2022" for a few days after Doe's drug use, possession, and distribution were discovered, strains credulity. Doe's allegations of impairment rest on the bare fact that his substance use was discovered. Doc. No. 30 ¶ 92. Doe also alleges that, only weeks later, he was functioning at a high level and no longer using substances. Doc. No. 30 ¶ 50. Doe's allegations amount to nothing more than semester-long substance use that was not severe enough to be readily apparent, until another student reported it. Doc. No. 30 ¶ 8, 27.

Doe also claims that his withdrawal from Hill caused him to live "the Covid pandemic all over again, in isolation." Doc. No. 30 ¶ 16. This allegation does not account for Doe's decisions after being withdrawn from Hill, including where to attend school. Doe references that he has been unable to keep his competitive tennis career going due to his withdrawal from Hill, and he seeks readmission to a highly-competitive boarding school as his remedy. Doc. No. 30 ¶ 95, Doe's allegations indicate a high degree of major life activity functionality.

Viewing Doe's allegations globally, he alleges: (1) he suffered from anxiety and depression before coming to Hill; (2) his condition improved while attending Hill; but (3) he used drugs, alcohol, and nicotine; and that (4) his disciplinary problems have caused him distress since he was expelled. Doc. No. 30 ¶¶ 16, 25, 27-28, 37, 50, 84, 114, 120. Doe only alleges discrimination based on substance use, regardless, none of the allegations related to other conditions indicate any impairment of a major life activity. Doc. No. 30 ¶ 92.

        *c.*     *Doe's Impairment Is Not "Verifiable To A High Degree Of Certainty"*

To show that the alleged impairment is substantial, "it must be verifiable to a high degree of certainty that the impact on the major life activity must be significant." *RHJ*, 754 F. Supp. 2d at 759. Doe has made no showing on this factor. The primary impairment alleged is that Doe went home four days early for winter recess. Doc. No. 30 ¶ 41,46. He does not allege, because he cannot, that he was unable to participate in athletic activities, attend classes, take exams, or complete his fall semester in good academic standing, all of which contradict the implication that his impairment would be verifiable to a high degree of certainty. Doc. No. 30 ¶ 92.

### 2.     Doe Was Not Precluded From Receiving A Promised Benefit

Even assuming that Doe adequately alleged a disability, the Am. Complaint shows that Doe was required to withdraw because he bullied another student, which is completely unrelated to his drug use. Doc. No. 30 ¶ 56-59, 61-63. Notably, Doe's substance use, distribution, and attempt to interfere with a drug investigation did not result in a DC meeting or a mandatory withdrawal. *See* Doc. No. 30 ¶¶ 24-50.

Not only was Doe allowed to remain enrolled at Hill after his violations of the School's substance use policies, but he was also allowed to participate in an on-campus counseling program that allowed him the opportunity to remain enrolled at Hill, while providing Doe with the support he alleges was critical to his well-being. Doc. No. 30 ¶¶ 40, 48, 50, 93. Doe's allegations sink his ADA claim, and he fails to plausibly plead that he was "precluded from participating in a program or receiving a service or benefit because of his disability." *CG v. Pennsylvania Dep't of Educ.,* 734 F.3d 229, 235 (3d Cir. 2013).

**3.      Doe Was Not Otherwise Qualified To Participate, But For His Disability, And The School Was Not Required To Accommodate His Disability By Foregoing Disciplinary Action**

When Doe engaged in bullying of a classmate only weeks after he was allowed to participate in I Care, the School was not required by the ADA to ignore its disciplinary policies simply because Doe previously had substance use issues. As one U.S. District Court has held, a school is "not required to compromise the integrity of the school's policies, values and/or academic requirements in order to 'accommodate' a student's disability." *DMP v. Fay Sch. ex rel. Bd. of Trustees*, 933 F. Supp. 2d 214, 222 (D. Mass. 2013).

Hill was not required to ignore Doe's bullying and disrespectful behavior, even if the School was supporting Doe through its I Care program. Doe must allege—beyond the level of mere speculation— that he was "otherwise qualified" to participate in the program at issue. *CG*, 734 F.3d at 235. Doe's conclusory assertion that he was otherwise qualified to fully participate at the School does not suffice, however, and Doe's attempts to recast his disciplinary process as a disability claim fail as a matter of law. Doc. No. 30 ¶ 93. Doe alleges deliberate discrimination by Hill based on his substance use. Doc. No. 30 ¶ 80. But even if taken as true, Doe's allegations support only the bare assertion that, because of his past drug use, Doe should be free from School punishment for unrelated offenses. Where, as here, a student seeks to attribute misconduct to disability, a school is not required to overlook behavior that merits disciplinary action. *See Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 465 (4th Cir. 2012).

## CONCLUSION

Even accepting as true all factual allegations in the Am. Complaint and drawing all inferences in the light most favorable to the plaintiff, as the Court must do on a motion under Rule 12(b)(6), Doe fails to state a viable claim for relief. For the reasons stated above, The Hill School and Ariel Baum

respectfully request that the Court grant the Defendants' Motion to Dismiss and further request the

Amended Complaint be dismissed without leave to amend.

Dated:  June 20, 2023

Respectfully submitted,

The Hill School and Ariel Baum

By their attorneys,

*/s/ Phillipa Gage Lilienthal*
Phillipa Gage Lilienthal, *pro hac vice*
(BBO # 664528)
John A. Duberstein, *pro hac vice*
(BBO # 689230)
Cara E. Murphy, *pro hac vice*
(BBO # 709521)
SCHWARTZ HANNUM PC
11 Chestnut Street
Andover, MA 01810
Telephone: (978) 623-0900
Facsimile: (978) 623-0908
plilienthal@shpclaw.com
jduberstein@shpclaw.com
cmurphy@shpclaw.com

Marc H. Perry, Esq.
I.D. # 68610
E-mail: mperry@postschell.com
POST & SCHELL, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103-2808
Telephone: 215-587-1000

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above document was filed on June 20, 2023 via the Court's electronic case filing system (ECF) and is available for downloading and viewing by all counsel of record.

*/s/ Phillipa Gage Lilienthal*