UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE | )<br>)<br>) |
| Plaintiff, | )<br>) Civil Action No. 2:23-cv-01210-GAM |
| v. | )<br>) |
| THE HILL SCHOOL and<br>ARIEL BAUM, | )<br>)<br>) |
| Defendants. | )<br>) |

**<u>DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS</u>**

Phillipa G. Lilienthal, Esq. (BBO # 646860) (*pro hac vice*)
John A. Duberstein, Esq. (BBO #689230) (*pro hac vice*)
Cara E. Murphy, Esq. (BBO # 709521) (*pro hac vice*)
Schwartz Hannum PC
11 Chestnut Street
Andover, Massachusetts 01810
(978) 623-0900
plilienthal@shpclaw.com
jduberstein@shpclaw.com
cmurphy@shpclaw.com

Marc H. Perry, Esq. (I.D. # 68610)
POST & SCHELL, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103-2808
(215) 587-1000
mperry@postschell.com

Attorneys for Defendants, The Hill School and Ariel Baum

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................iii

INTRODUCTION.................................................................................................................................. 1

LEGAL ARGUMENT........................................................................................................................... 1

    I.    **Doe's Opp. Confirms That He Fails To State A Claim For Breach Of Contract** ........................1

        A. **The Law Does Not Require The Hill School To Follow Its Policies "To The Letter"** ................1

        B. **The Head Of School's Discretion Was Not Limited By The DC** ..................................................2

        C. **Doe Fails In His Attempt To Manufacture Contract Ambiguity** ..................................................3

    II.    **Doe's Promissory Estoppel Argument Misstates The Law And Fails To Allege A Promise Outside The Scope Of The Written Agreement** ..........................................................................4

    III.    **The 'Gist Of The Action' Theory Precludes Doe's Tort Claims**......................................................4

        A. **Doe's Claims All Arise Out Of The Agreement Between The Parties** ..........................................4

        B. **Doe Fails To Plausibly Allege A "Broader Social Duty" For His Tort Claims** ............................5

    IV.    **Doe Fails To Plausibly Allege "Extreme and Outrageous" Conduct For IIED** ..........................6

    V.    **Doe Fails To State A Claim For Negligent Infliction Of Emotional Distress** ...............................9

        A. **Doe Fails To Allege The Sort Of Special Relationship Required For NIED**...............................9

        B. **Doe Fails To Allege Sufficient Compensable Emotional Harm For NIED**................................10

    VI.    **Hill Could Expel Doe For Misconduct, Even If Related To A Disability**...................................10

CONCLUSION ................................................................................................................................... 12

CERTIFICATE OF SERVICE............................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Angino v. Wells Fargo Bank, N.A.*, 1:15-CV-418, 2016 WL 787652 (M.D. Pa. Feb. 19, 2016) .............. 6, 9

*Azer Sci. Inc. v. Quidel Corp.*, No. 5:21-CV-02972-JMG, 2021 WL 5918655 (E.D. Pa. Dec. 15, 2021) .... 4

*Boehm v. Univ. of Pa. Sch. Of Veterinary Med.,* 573 A.2d 575 (Pa. Super. Ct. 1990) ................................ 1

*Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79 (3d Cir. 2001) ............................................ 5

*Corbett v. Morgenstern*, 934 F. Supp. 680 (E.D. Pa. 1996) ........................................................................ 6

*DMP v. Fay Sch. ex rel. Bd. of Trustees,* 933 F. Supp. 2d 214 (D. Mass. 2013) .................................. 11, 12

*Dobson v. Milton Hershey Sch.*, 356 F. Supp 3d 428 (M.D. Pa. 2018) ........................................................ 5

*Doe v. Brown Univ.*, 43 F.4th 195 (1st Cir. 2022) ....................................................................................... 7

*Doe v. Hill Sch.*, No. CV 23-1210, 2023 WL 2868016 (E.D. Pa. Apr. 10, 2023) ............................... 2, 3, 11

*eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002) ........................................ 6

*Gazarov ex rel. Gazarov v. Diocese of Erie*, 80 F. App'x 202 (3d Cir. 2003) ............................................ 2

*Gendia v. Drexel Univ.*, No. CV 20-1104, 2020 WL 5258315 (E.D. Pa. Sept. 2, 2020) ............................ 2

*Gray v. Great Valley Sch. Dist.*, 102 F. Supp. 3d 671 (E.D. Pa. 2015) ...................................................... 8

*Greiser v. Drinkard*, 516 F. Supp. 3d 430 (E.D. Pa. 2021) ........................................................................ 8

*Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454 (4th Cir. 2012) .............................................. 12

*Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454 (E.D. Pa. 2014) .................................................. 9, 10

*Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998) ................................................................................................ 8

*Humphries v. Penn State Univ.,* 4:20-CV-00064, 2021 WL 4355352 (M.D. Pa. Sept. 24, 2021) ............. 10

*Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78 (1st Cir. 2012) ................................................................ 11

*K7 Design v. Five Below*, 540 F. Supp. 3d 508 (E.D. Pa 2021) ................................................................ 4

*Kling v. Univ. of Pittsburgh Med. Ctr.*, 2:18-CV-01368-MJH, 2020 WL 4218004 (W.D. Pa. July 23, 2020) ............................................................................................................................................................ 9

*Kovalev v. Walmart Inc.*, CV 22-1217, 2022 WL 6775714 (E.D. Pa. Oct. 11, 2022) ................................. 9

*MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565 (W.D. Pa. 2019) ..................................... 9, 10

*Mekuns v. Capella Educ. Co.*, No. CV 15-1542, 2015 WL 7075825 (E.D. Pa. Nov. 13, 2015) .................. 5

*Murphy v. Duquesne Univ.*, 565 Pa. 571 (Pa. 2001) .................................................................................. 1

*Siler v. Cmty. Educ. Centers, Inc.*, No. CIV.A. 14-5019, 2014 WL 4931291 (E.D. Pa. Oct. 2, 2014) ......... 8

*Toney v. Chester Cnty. Hosp.*, 36 A.3d 83 (Pa. 2011) ................................................................................ 9

*Wartluft v. Milton Hershey Sch. & Sch. Tr.*, 1:16-CV-2145, 2020 WL 1285332 (M.D. Pa. Mar. 18, 2020) 7

*Weinstein v. Bullick*, 827 F. Supp. 1193 (E.D. Pa. 1993) .......................................................................... 8

*Zimmeck v. Marshall Univ. Bd. of Governors,* 632 F. App'x 117 (4th Cir. 2015) .................................... 12

**Treatises**

Restatement (Second) of Torts § 46 (1965) ...................................................................................... 6, 7, 8

**Regulations**

42 U.S.C. § 12182(a) ................................................................................................................................ 11

## INTRODUCTION

Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss the Amended Complaint (Plaintiff's "Opp.") does not change the fact that even when viewed in the light most favorable to Doe, Doe's allegations fail to state a viable claim for relief. Based on Defendants' Motion and this Reply, each of Doe's claims should be dismissed.

## LEGAL ARGUMENT

I. **Doe's Opp. Confirms That He Fails To State A Claim For Breach Of Contract**

   A. **The Law Does Not Require The Hill School To Follow Its Policies "To The Letter"**

Relying on a single case, *Murphy v. Duquesne Univ.*, 565 Pa. 571 (Pa. 2001), Doe argues that The Hill School ("Hill" or the "School") breached its contract with Doe by failing to follow its rules "to the letter." The law does not require private schools to follow their rules "to the letter," but rather, requires substantial compliance. Doc. No. 35 at 23; Doc. 33-1 at 17. In *Murphy*, unlike at Hill, the contract required the School to follow a "judicial-like process," provided a right to "appeal from the President's final decision," and that Plaintiff would "not be subject to the President's whim. All of the participants in the process, including [the University President], were required to follow the Contract's process to the letter[.]" *Murphy,* 565 Pa. at 598. In contrast, Hill has no such "judicial-like" procedures, rights of appeal, strict standard of proof, nor such limits on the Head of School's discretion. *See* Doc 30-1; Doc 30-2; Doc 33-2.

Moreover, Doe's own allegations show that Hill more than "substantially complied" with the School's policies, which is what the law requires here.[1] Doe's Amended Complaint ("Am.

---

[1] As discussed in Defendants' Memorandum (Doc. No. 33-1, "Mem.") "[t]he general rule, therefore, has been that where a private [school] establishes procedures for the suspension or expulsion of its students, substantial compliance with those established procedures must be had before a student can be suspended or expelled." *Boehm v. Univ. of Pa. Sch. Of Veterinary Med.,* 573 A.2d 575, 579 (Pa. Super. Ct. 1990); Doc. No. 33 at 12.

1

Compl.") and Opp. both affirm that Defendants followed the disciplinary process in the Handbook. Doc. No. 30 ¶¶ 13, 14, 64, 66-67, 70-71, 73-74, 76, 79-80, 82; Doc. No. 35 at 14-20. (Doe's allegations include, *e.g.*, Hill offers a lighter sanction for confessions after Doe throws water and protein powder on a sleeping student; Hill offers a Discipline Committee meeting ("DC") even though Doe did not confess; the DC unanimously recommends withdrawal after a full hearing; the Head of School requires Doe's withdrawal.) *Id*.

B.    **The Head Of School's Discretion Was Not Limited By The DC**

Doe alleges that Hill's DC process limited the Head of School's discretion. Doc. 35 at 24-25. Notably, neither Hill's policies nor the law restrict the Head from requiring a student to withdraw for serious misconduct. *See* Doc. No. 33-2 at 3; Doc. No. 30-1 at 59, 68 ("the Head of School, without convening the Discipline Committee, has the right to require the immediate withdrawal of any student <u>at any time</u>," and, even after a DC, "the final decision is made by the Head of School") (emphasis added). *See also Gendia v. Drexel Univ.*, No. CV 20-1104, 2020 WL 5258315, at *5–6 (E.D. Pa. Sept. 2, 2020) (Plaintiff "characterizes this 'opportunity to cross-examine' as 'superficial at best' and a 'sham[,]' because the adjudicator was a 'gate-keeper for any questioning'" but court held process was fair within the meaning of its policy and the law.); *see also Gazarov ex rel. Gazarov v. Diocese of Erie*, 80 F. App'x 202, 206 (3d Cir. 2003) ("[Plaintiff's] claim fails because the policy allowed for 'immediate dismissal' for serious misbehavior."). There is no Hill policy limiting the Head of School's discretion; as this Court held at the preliminary injunction stage, the "scope of any further immunity rests within the discretion of school officials." *Doe v. Hill Sch.*, No. CV 23-1210, 2023 WL 2868016, at *2 (E.D. Pa. Apr. 10, 2023). Regardless, the Head of School supported the DC process. She waited for

2

and accepted the DC's recommendation, ultimately deciding to require Doe's withdrawal. Doc. No. 33-2 at 3; Doc. No. 30-1 at 59, 68.

### C. Doe Fails In His Attempt To Manufacture Contract Ambiguity

For the first time in this litigation, Doe alleges in the Opp. that the drug detoxifying agent he possessed was "drug paraphernalia" and therefore should fall under the I Care agreement provisions for substance use/possession. Doc. No. 35 at 25-27. Doe also argues that the "meaning of the term as it is used in the Handbook is … ambiguous." *Id*. at 27.

Doe's newest arguments are irrelevant. I Care's policy is an alternative to discipline for a student's "own substance use," and Doe's misconduct was unrelated to his personal use.[2] Doc. No. 30 ¶¶ 35, 45, 73, 126; Doc 30-1 at 95. Doe interfered with a school investigation, a separate offense under the Handbook, Doc. No. 30-1 at 69. Doe was disciplined because he admittedly "… attempted to assist another student in avoiding a positive test result for drug use by procuring a type of cleansing agent that would purportedly mask usage." *Doe v. Hill Sch.*, 2023 WL 2868016, at *1. Doc. No. 30 ¶ 35; Doc. No. 31 ¶¶ 25, 45-47; s*ee* Doc. No. 33-4 at 2-3. ("[B]eyond his place in I Care … [Doe] brought a cleansing agent to the Wellness Center, at the request of another student, to assist that student in subverting a medical procedure related to detecting substance usage."). For that reason, and because Doe was required to withdraw for bullying and disrespectful behavior, Doe's newest allegations that the agent should be considered "drug paraphernalia" are immaterial. Doc. No. 30 ¶ 79. His contract claim should be dismissed.

---

[2] *See also Doe v. Hill Sch*., 2023 WL 2868016, at *3 ("Doe's attempt to help another student evade detection had nothing to do with his own substance abuse and was not therefore covered by the I-Care promise of immunity.").

3

## II. Doe's Promissory Estoppel Argument Misstates The Law And Fails To Allege A Promise Outside The Scope Of The Written Agreement

Doe pleads promissory estoppel "in the alternative." Doc. No. 35 at 30. Yet a plaintiff is permitted to plead alternative equitable theories only "in cases where there is a question as to the validity of the contract in question." *Azer Sci. Inc. v. Quidel Corp.*, No. 5:21-CV-02972-JMG, 2021 WL 5918655, at *4 (E.D. Pa. Dec. 15, 2021) (emphasis added) (cited in Doe's Opp.). Doe insinuates that Defendants deny the existence of a contract, Doc. No. 35 at 6, 30, 32, but paradoxically admits that "Defendants' motion does not dispute that Hill's procedures form a contract[.]" Doc. No. 35 at 24. *See also* Doc. No. 33-1 at 13. Defendants agree there was a contract between Doe and Hill. Doe's claim that the contract is in question is misleading and fails to support a claim for promissory estoppel "in the alternative".

Doe's arguments for reasonable reliance fail. Doc. No. 35 at 29. Doe does not and cannot allege promises by Hill that are outside the contractual promises of I Care and the School's disciplinary process. *See generally* Doc. No. 30. Nor do Doe's cited cases support his promissory estoppel claim. For example, *K7 Design v. Five Below*, 540 F. Supp. 3d 508 (E.D. Pa 2021) did not rule that the issue cannot be decided on a motion to dismiss. *Id.* at 513. Further, in *K7*, the very existence of a contract, based on an email exchange, was in dispute. *Id*. Doe's argument on whether his reliance was reasonable fails along the same lines as his alternative pleading theory: there is no question that a contract exists and that the Enrollment Agreement, Handbook and I Care agreement set forth clearly the relevant contractual promises.

## III. The 'Gist Of The Action' Theory Precludes Doe's Tort Claims

### A. Doe's Claims All Arise Out Of The Agreement Between The Parties

Under Pennsylvania's "gist of the action" theory, to make a separate tort claim arising from the same circumstances as a contract claim, "the [tortious] wrong ascribed to the defendant

4

must be the gist of the action with the contract being collateral." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103 (3d Cir. 2001). Doe expressly relies on the contract terms of his enrollment at Hill for the same wrongs for which he attempts to make tort claims, *i.e.*, that he was disciplined and expelled in violation of the Handbook and supposed I Care immunity. Doc. No. 35 at 33-34 citing Doc. No. 30 at 3 (¶ 7), 12 (¶ 30), 32, (¶ 100); Doc. No. 30-1 at 94 (*e.g.*, "Doe chose the I Care program, a drug rehabilitation program that the School's Handbook stated came 'without a traditional disciplinary response.'"). These claims are all principally (if not exclusively) for breach of contract. Doc. No. 33-1 at 17; Doc. No. 35 at 24, 28, 29, 33.

### B. Doe Fails To Plausibly Allege A "Broader Social Duty" For His Tort Claims

Doe argues his tort claims arise from a "broader social duty." Doc. No. 35 at 31. Yet under Pennsylvania law, Doe's relationship with the School in these circumstances is "purely contractual." *Mekuns v. Capella Educ. Co.*, No. CV 15-1542, 2015 WL 7075825, at *3 (E.D. Pa. Nov. 13, 2015), *aff'd,* 655 F. App'x 149 (3d Cir. 2016). A "claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." *Bohler-Uddeholm*, 247 F.3d at 103–04. Doe relies on *Dobson v. Milton Hershey Sch.*, 356 F. Supp 3d 428 (M.D. Pa. 2018). Doc. No. 35 at 30-31. *Dobson* identified the "protection of minor children" as a social duty. *Id. at 437.* The court focused on the defendant's psychological mistreatment of Dobson, including claims that the school hospitalized Dobson, tried "conversion therapy" on him for being gay, and had him discharged from inpatient treatment despite the risks of going home to parents who had substance abuse issues. *Id.* at 437-438.

In contrast, Doe was not a minor child when he was expelled and does not allege he received deficient counseling or care while at Hill; quite the opposite. Doc. No. 30 ¶ 50.

5

Defendants' decision to permit Doe to enter the I Care Program in lieu of expulsion for drug use and distribution, to discipline him for interference with an investigation, and to require his withdrawal for bullying, are all supported by the Handbook and Enrollment Agreement. Doc. No. 30-1 at 59-75, 95-97; Doc. No. 33-2. "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). Doe's tort allegations are all defined by his contractual relationship with Hill and must fail as a matter of law.

### IV.     Doe Fails To Plausibly Allege "Extreme and Outrageous" Conduct For IIED

"Under Pennsylvania law, it is for the court to determine ... whether [the] defendant's conduct can be reasonably regarded as so extreme and outrageous to permit recovery." *Corbett v. Morgenstern*, 934 F. Supp. 680, 684 (E.D. Pa. 1996).

Doe implies that it is sufficient for his IIED claim that Defendants were in a "position of power" with respect to Doe. Doc. No. 35 at 34-35. In fact, Doe must show that Defendants' conduct was extreme or outrageous. *Angino v. Wells Fargo Bank, N.A.*, 1:15-CV-418, 2016 WL 787652, at *13 (M.D. Pa. Feb. 19, 2016), *aff'd*, 666 Fed. App'x. 204 (3d Cir. 2016) (citing Restatement (Second) of Torts § 46 (1965) (Even where an actor holds power over another, they will not be held liable for "mere insults, indignities, or annoyances that are not extreme or outrageous."). Characterizing Baum and the School's actions as "malicious" would be inadequate to reach the substantial threshold, even assuming it were true: "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice…'") Restatement (Second) of Torts § 46 (1965), comment *d* (internal citations omitted).

6

Doe relies on *Doe v. Brown Univ.*, 43 F.4th 195, 210 (1st Cir. 2022), Doc. No. 35 at 33, but *Brown* states only that the student-school relationship is a factor to consider. *Brown*, 43 F.4th at 210. While Brown owed "at least some heightened solicitude" because of the power disparity, the student plaintiff still had to make the required showing of outrageous conduct. *Id. Brown's* circumstances were also far more aggravated: two university officials met with the plaintiff the day the student plaintiff was discharged from the hospital for a suicide attempt, and although the sexual misconduct allegations against him had not been investigated, the officials threatened additional charges and removal from his on-campus housing if he did not withdraw immediately. *Id.* at 202-04.

Doe argues that extreme and outrageous conduct may flow "from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." Doc. No. 35 at 33. But "major outrage" is still an essential element, and "the mere fact that the actor knows that the other…will have his feelings hurt, is not enough" to constitute IIED. Restatement (Second) of Torts § 46 (1965). **"**Schools throughout this country frequently decide to remove students from their programs for myriad reasons[,]" and that action alone does not meet the high IIED standard, even if a plaintiff was more susceptible to emotional distress. *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, 1:16-CV-2145, 2020 WL 1285332, at *15 (M.D. Pa. Mar. 18, 2020), *aff'd,* 844 Fed. App'x. 499 (3d Cir. 2021) *Wartluft* – relied upon by Doe, *see* Doc. No. 35 at 30-31—held that the decision to bar a mentally ill student from returning to school could not "constitute extreme and outrageous conduct that goes 'beyond all possible bounds of decency'... Were we to so find, we would unduly neuter the standard for extreme and outrageous conduct under Pennsylvania law or hyper-expand its scope." *Id*.

7

In the instant case, Doe claims as evidence of outrageous conduct that Defendants "pushed" him to enter I Care and then punished him (for conduct unrelated to his substance use). Doc. No 35 at 35. In fact, Doe was permitted, not pushed, to enter I Care as an alternative to immediate expulsion for his personal drug use, and with no promise of complete immunity. Moreover, Doe's disciplinary process took place at a time Doe alleges he was sober—after Hill and Baum helped him successfully participate in the I Care program. Doc. No. 30 ¶ 50.

Even assuming they were true, none of Doe's allegations constitute severe or outrageous conduct as required to prevail on an IIED claim. *Siler v. Cmty. Educ. Centers, Inc.*, No. CIV.A. 14-5019, 2014 WL 4931291, at *7 (E.D. Pa. Oct. 2, 2014) ("To the extent Plaintiff claims his discriminatory treatment and termination are the basis of his emotional distress, Plaintiff's allegations are insufficient to meet the outrageousness element of an IIED claim."); Restatement (Second) of Torts § 46 (1965), comment *d*. *Cf., Gray v. Great Valley Sch. Dist*., 102 F. Supp. 3d 671, 683 (E.D. Pa. 2015) (IIED found where asst. principal "physically dragged" student to the nurse, stood outside while she was strip-searched and subjected to an "additional physical examination.").[3] Finally, Doe's claims that he was subject to a malicious "vendetta" masterminded by Baum with racist intent to set Doe up for future expulsion are conclusory.[4] *See, e.g.*, Doc. No. 35 at 34-35. Doe cannot meet the pleading requirements to state a claim for IIED.

---

[3] Doe cites additional cases that do not support his argument. Doc. No. 35 at 32 (citing *Greiser v. Drinkard*, 516 F. Supp. 3d 430, 440 (E.D. Pa. 2021), *reconsideration denied*, No. CV 18-5044, 2021 WL 5435737 (E.D. Pa. Apr. 29, 2021), *aff'd*, No. 21-1879, 2022 WL 412946 (3d Cir. Feb. 10, 2022), and *aff'd,* WL 412946 (3d Cir. Feb. 10, 2022) (IIED reserved for the "most egregious of situations. Plaintiff has not alleged conduct that meets this standard[.]"); *Weinstein v. Bullick*, 827 F. Supp. 1193, 1203 (E.D. Pa. 1993) ("The Pennsylvania Supreme Court has repeatedly applied the *Restatement* definition to claims for intentional infliction of emotional distress. However, the court has also repeatedly found that the facts presented did not constitute the tort."); *Hoy v. Angelone*, 720 A.2d 745, 753–54 (Pa. 1998) (Courts reluctant "to allow recovery for a claim of intentional infliction of emotional distress.").

[4] In lieu of plausible allegations, Doe's Am. Compl. and Opp. in particular are dedicated to personal attacks, ascribing unfounded evil and potentially racist motives to Baum and Hill. *See, e.g.,* Doc. No. 35 at 34-35; Doc. No. 30 ¶¶ 12 n.1, 42, 118, 119. Doe speculates wildly, arguing that "Baum personally disliked Doe…and may have been racially biased against him," and "Baum…cooked up a scheme to discipline Doe and brand him with a probationary status that would ensure his expulsion for any future infraction – however slight. Dean Baum hatched this plan over the winter break, after Doe had already been admitted to I Care," despite allegedly promising Doe amnesty. Doc.

V. **Doe Fails To State A Claim For Negligent Infliction Of Emotional Distress**

A. **Doe Fails To Allege The Sort Of Special Relationship Required For NIED**

Doe argues that he had a special relationship with the School because Hill undertook to care for him, citing *Toney v. Chester County Hospital*. Doc. No. 35 at 38; *See Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 84, 95 (Pa. 2011). It is true that the special relationships required for NIED liability "must encompass an implied duty to care for the plaintiff's emotional well-being." *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014). However, while it is a necessary condition for this claim, courts recognize only a limited set of special relationships, and "not even all doctor-patient relationships would qualify." *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 593 (W.D. Pa. 2019). Since *Toney*, Pennsylvania courts have frequently declined to extend special relationships for NIED. *Kovalev v. Walmart Inc.*, CV 22-1217, 2022 WL 6775714, at *5 (E.D. Pa. Oct. 11, 2022) ("the case law presents an ever-growing list of relationships which have not qualified.").

Courts have repeatedly held that the student-school relationship is not a special relationship for NIED. *Kling v. Univ. of Pittsburgh Med. Ctr.*, 2:18-CV-01368-MJH, 2020 WL 4218004, at *2 (W.D. Pa. July 23, 2020); (no special relationship between college and student for NIED claim); *Hershman*, 17 F. Supp. 3d at 459 (no special relationship between college and depressed student for NIED); *MDB*, 386 F. Supp. 3d at 594 (no special relationship between a minor student and a private school).

In *Hershman*, the plaintiff sought and received treatment from the college's counseling office for depression. 17 F. Supp. 3d at 456. Due to his depression, he failed to satisfy the attendance requirement to graduate. *Id*. The court, relying in part on *Toney*, looked at

---

No. 35 at 3-5, 13, 17-20, 32-35; Doc. No. 30 ¶ 42. Such baseless allegations do not "raise a right to relief above the speculative level." *Angino*, 2016 WL 787652, at *12 , *aff'd*, 666 Fed.Appx. 204 (3d Cir. 2016).

9

"preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach[,]" *Id*. at 459, and found that "the relationship between a college and its students does not obviously hold the potential of deep emotional harm" despite the school's undertaking to care for the students' well-being. *Id.* at 460.

Similarly, in *Humphries v. Penn State Univ.*, the court found no special relationship based on "the narrow scope of this not-quite recognized NIED liability ground … courts in this state have found that 'the relationship between a [school] and its students does not hold the potential of deep emotional harm.'" 4:20-CV-00064, 2021 WL 4355352, at *21-22 (M.D. Pa. Sept. 24, 2021), motion to cert. appeal denied, 2021 WL 5792832 (M.D. Pa. Dec. 7, 2021).

### B. Doe Fails To Allege Sufficient Compensable Emotional Harm For NIED

Doe acknowledges that compensable emotional harm "must not be the type that a reasonable person is expected to bear." Doc. 35 at 36. Actionable emotional distress must be a "visceral and devastating assault on the self ... resembl[ing] physical agony in its brutality." *Hershman*, 17 F. Supp. 3d. at 459. "The quintessential example is the botched burial." *Humphries*, 2021 WL 4355352, at *22. Withdrawing from school, leaving friends, and entering a new school "is the kind of harm that reasonable people are expected to bear." *MDB*, 386 F. Supp. 3d at 594. Doe has failed to allege a special relationship with the School or compensable emotional harm, and his claims for NIED should be dismissed.

### VI. Hill Could Expel Doe For Misconduct, Even If Related To A Disability

Doe argues that he is disabled (or perceived as disabled). Doc. No. 35 at 41-42. As argued in Defendants' Mem., Doe's evidence of impairment of major life activities is implausible. Doc. No. 33-1 at 27-30. However, even assuming Doe's disability allegations are true, that does not prevent Hill from expelling him *for bullying*. Doe was not asked to withdraw

from Hill because of his substance use or possession or any conduct related to it, but for bullying another student when Doe was admittedly not impaired. Doc. No. 30 ¶¶ 50-63., 71-72.[5]

Doe's claim that Defendants wrongly rely on accommodation cases is incorrect. Doc. No. 35 at 40-41. Accommodation and disparate treatment are frequently examined together because whether a plaintiff requested a reasonable accommodation and whether they were qualified to participate in a program are related. *See Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st Cir. 2012). However, *DMP v. Fay Sch. ex rel. Bd. of Trustees ("Fay")*, the case in question, is not just an "accommodation case" but a disparate treatment case, as the opinion makes clear, stating that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." 933 F. Supp. 2d 214, 221–22 (D. Mass. 2013) (citing 42 U.S.C. § 12182(a)) (the Title III anti-discrimination provision).

*Fay* is on point. The *Fay* court found that because the plaintiff "was not otherwise qualified to matriculate at Fay, he has failed to establish a claim for violation of the ADA." *Id*. The plaintiff in *Fay* engaged in "behaviors which are unacceptable at an institution of learning, regardless of whether Plaintiff can attribute such behavior to his disability or not[,]" and was disciplined. *Id*.

The core of *Fay*, just as in Doe's claim, was the student's misconduct: "it is undisputed that" the student committed "a major rules violation under the Handbook" and "committed a major rules violation while on final probation.... Simply put, [the school] is not required to compromise the integrity of the school's policies, values and/or academic requirements in order

---

[5] As the Court noted in denying Doe's request for a preliminary injunction, "Doe…was not dismissed because of substance abuse but rather for his participation in a bullying incident at a point in time when, by his own admission, he was not impaired because he had abstained from any drug use by virtue of his participation in I-Care." *Doe v. Hill Sch.*, 2023 WL 2868016, at *3.

11

to 'accommodate' a student's disability." *Fay*, 933 F. Supp. 2d at 221–22. The law holds that "misconduct—even misconduct related to disability—is not itself a disability" and may be a basis for dismissal from an academic program. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012). Like the students in *Halpern*, 669 F.3d at 465, and *Zimmeck v. Marshall Univ. Bd. of Governors*, Doe's ADA discrimination claim fails because the school "repeatedly warned [the Student] that further misconduct could result in disciplinary sanctions up to and including dismissal." 632 F. App'x 117, 120 (4th Cir. 2015). Far from discrimination, Doe got another chance to stay at Hill through I Care. Moreover, Doe's alleged disability (even if he is disabled) does not prevent the School from disciplining him for bullying and disrespectful behavior. Doe's ADA claim should be dismissed.

## **CONCLUSION**

For the reasons stated above and in Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, incorporated herein, Defendants respectfully request that the Court grant the Defendants' Motion in its entirety.

| | |
|---|---|
| August 4, 2023 | Respectfully submitted, |
| | The Hill School and Ariel Baum |
| | By their attorneys, |

*/s/ Phillipa Gage Lilienthal*
Phillipa Gage Lilienthal, *pro hac vice*
(BBO # 664528)
John A. Duberstein, *pro hac vice*
(BBO # 689230)
Cara E. Murphy, *pro hac vice*
(BBO # 709521)
SCHWARTZ HANNUM PC
11 Chestnut Street
Andover, MA 01810
Telephone: (978) 623-0900
Facsimile: (978) 623-0908
plilienthal@shpclaw.com
jduberstein@shpclaw.com
cmurphy@shpclaw.com

Marc H. Perry, Esq.
I.D. # 68610
E-mail: mperry@postschell.com
POST & SCHELL, P.C.
Four Penn Center, 13th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA  19103-2808
Telephone: 215-587-1000

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the above document was filed on August 4, 2023 via the Court's electronic case filing system (ECF) and is available for downloading and viewing by all counsel of record.

*/s/ Phillipa Gage Lilienthal*_____
